**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:   (619) 696-9006
Facsimile:   (619) 564-6665

*Counsel for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF CALIFORNIA

REGINA BOZIC, on behalf of herself, all others similarly situated, and the general public,

                    Plaintiff,

          v.

HENNY DEN UIJL; an individual, SANDRA DEN UIJL; an individual, BRYAN CORLETT; an individual, OBESITY RESEARCH INSTITUTE, a California Limited Liability Company, CONTINUITY PRODUCTS, a Delaware Limited Liability Company; NATIONAL WEIGHT LOSS INSTITUTE, a California Limited Liability Company; ZODIAC FOUNDATION. a California Limited Liability Company; CONVERSION SYSTEMS, a California Limited Liability Company; INNOTRAC CORPORATION, a Georgia Corporation,

                    Defendants.

CASE No.   **'16 CV 0733 BTM RBB**

CLASS ACTION

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS**

Jury Trial Demanded

Plaintiff Regina Bozic, by and through her undersigned counsel, hereby brings the below claims on behalf of herself, all others similarly situated, and the general public against Defendants Henny Den Uijl ("Henny"), Sandra Den Uijl ("Sandra"), Bryan Corlett, Obesity Research Institute, LLC ("ORI"), Continuity Products, LLC ("Continuity"), National Weight Loss Institute, Zodiac Foundation, LLC ("Zodiac"), , Conversion Systems, LLC, ("Conversion"), and the Innotrac Corporation ("Innotrac") alleging the following on personal knowledge or, where Plaintiff lacks personal knowledge, upon information and belief, including the investigation of her counsel. The claims and other legal contentions alleged in this complaint are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law and all factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery:

## **INTRODUCTION**

1. Thomas Edison once said: "*For faith, as well intentioned as it may be, must be built on facts, not fiction— faith in fiction is a damable false hope.*" This case involves one of the most damable and predatory types of false hope— promising consumers that by taking a "***clinically proven***" weight loss pill, they will "***lose weight without diet and exercise***." Such tempting claims give people faith; After all, why would the advertisers say it if it were not true? Wouldn't they be breaking the law if their claims were false? But as Thomas Edison has told us, faith must be built on facts— not fiction.

2. There are no facts supporting the promises made by the Defendants in this case with respect to their advertising of Lipozene. Defendants have been warned before about their damable false hopes. But Defendants still spread the fictions, that lead to consumer faith, which eventually lead to even more damnable false hopes. Defendants must now answer to consumers.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

3.     This is a class action lawsuit on behalf of purchasers of Lipozene, which is marketed as "**AMERICA'S NUMBER #1 DIET SUPPLEMENT**" and claims to have "**Sold *Over* 25 MILLION Bottles**."

4.     Through a uniform and comprehensive marketing scheme, Lipozene is advertised online, in magazines, and in retail stores as being the "CLINICALLY PROVEN" weight loss supplement that helps users "LOSE WEIGHT WITHOUT DIET AND EXERCISE."

5.     Lipozene is a staple of television infomercial programming, and has been featured on late night television since at least 2006.  Early Lipozene commercials featured a then unknown television actress— Stacey Travis.[1]  She asked Americans some important questions about their weight loss options at a time when weight loss surgeries like liposuction were garnering media attention.

> Are you overweight?
>
> Has it gotten so out of control that you've considered
>
> liposuction or other surgery?
>
> Well you are not alone. **Many of us have given up <u>the hope</u> <u>to lose weight</u>**.
>
> *****
>
> Liposuction surgery can be dangerous and expensive.
>
> So before you consider surgery, listen to this.
>
> Researchers have now discovered a capsule that helps remove
>
> this body fat and reduce your weight without harmful surgery.
>
> **It's called LIPOZENE- *Clinically proven to reduce your*** ***body fat and weight without surgery***.

---

[1] *See* Filmography of Stacey Travis, INTERNET MOVIE DATABASE (IMDB.COM), *available at* http://www.imdb.com/name/nm0006826/.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20

6.     A *Los Angeles Times* article has called Lipozene "a dominant presence on basic cable."[2]  In 2008, ABC News published the following story titled "*Can a Diet Pill Work Without Diet or Exercise?*:"

21
22
23
24
25
26
27

[2] Chris Woolston, *WEIGHT LOSS: A HOW-TO GUIDE / THE HEALTHY SKEPTIC Bold claims for Lipozene, but not Much Evidence,* LOS ANGELES TIMES (Jun. 9, 2008), *available at* http://goo.gl/jmPm4J. ("The bottom line: There's simply no good evidence that the small doses of glucomannan offered by Lipozene could lead to significant weight loss, says Vladimir Vuksan, a professor of nutritional sciences at the University of Toronto.").

28

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

America's obesity struggles have made international headlines in the last several years, and with the new year have come countless slim-down resolutions.

\*\*\*

And now some health-care professionals are voicing concern over one infomercial suggesting easy weight loss without having to work hard through diet and exercise.

"There's no secret remedy that has been buried for all these decades. I promise you, if there were something good, we'd all know about it. It would be on the front page of the newspaper. We'd all be using it and they wouldn't have to promote it on television," said George Washington University Weight Management Program medical director Arthur Frank.

Yet, commercials promising weight loss with a mere pill pop continue to woo customers' wallets and fuel the _**$55 billion U.S. weight loss market**_, according to Market Data Enterprises.

One popular product whose commercials regularly air late at night may not be delivering on its promises, according to at least one dissatisfied customer.

"I believe it's money wasted," said one woman who said the diet pill Lipozene was ineffective. "I didn't see the results that I thought I would be getting." She asked that her identity be concealed.

The price isn't cheap. One month's supply cost ABC News $81.77.

**When you're looking to lose weight and you're putting _your hopes_ into a product, you want it to be a viable product," the woman added.**

**Lipozene makes incredible claims and has generated much hype. Its infomercial suggests people can eat what they want without changing their lifestyles and still lose weight.**

"It's a miracle, I swear it is," says one person quoted on the commercial.

5

"I just ate what I wanted and I lost weight. & Being able to lose the weight without having to really work hard is really fantastic. I loved it."

Frank said he finds these claims troubling.

"I get very worried; I get very concerned when they say that you don't have to change the way you eat, and you don't have to change your lifestyle," Frank said. "Then I say, 'No, no, no. That doesn't work. It doesn't make any sense.'"

**Weight loss experts said <u>it's nearly impossible for Lipozene to work</u>. The pill essentially is a fiber pill and its ads mislead, they said**. "**<u>This type of an infomercial does raise *false hopes*</u>**," said David Heber, a professor of medicine and UCLA Center for Human Nutrition director.

The pill's active ingredient is glucomannan, which is supposed to expand in the stomach and fill it up so people eat less. The ads claim the pill's effectiveness is "backed by 12 clinical studies."

Heber said the studies deal with glucomannan, but not Lipozene, itself. The research also included an additional element that was not hyped in the Lipozene infomercial.

"All of them had diet and exercise included. You can't simply lose weight without diet and exercise," Heber said.

Only in small, hard-to-read print at the bottom of the infomercial does the same information appear in the Lipozene infomercials.

**The Obesity Research Institute**

The Obesity Research Institute, which is the company behind Lipozene, may sound official, but it's really just a privately run company. ABC News traced the company to an Encinitas, Calif., house.

In 2004, "Good Morning America" investigated the claims of another amazing weight loss product Propolene, which was also produced by the institute.

"I was 247 [pounds] eight weeks ago and I'm 30 pounds lighter today," one enthused customer said in the Propolene infomercial.

After the ABC News report, the Federal Trade Commission also investigated the Obesity Research Institute.

"These ads really caught our eye because of the extreme weight loss claims they were making," said FTC advertising practices associate director Mary Engle.

The FTC fined the institute and its key players $1.5 million for making false and deceptive claims about Propolene and three other diet pills.

"The FTC requires that all advertising claims be truthful, not misleading, and backed up by sound science," Engle said.

In the settlement, the defendants denied the allegations and admitted no wrongdoing.

**The Company's Response**

The company refused to give ABC News an official comment about Lipozene. But ABC News reached a Lipozene supervisor by phone who said that the claims in the infomercial are "100 percent true" and that people don't have to change their diet or exercise habits to lose weight. The supervisor added that customers will achieve faster results if they alter their diet and workout patterns. He said the company hears success stories all the time, but admitted it doesn't work for everyone.
ABC News found no mention of diet and exercise on Lipozene's bottle or packaging.

Engle, who wouldn't comment specifically on the Lipozene ad, said people should look at weight loss product claims with a skeptical eye.

"Your mother may have told you, 'If it sounds too good to be true, it probably is.' Well, that's correct. That's good advice. It's advice we should all listen to," Engle said.

7

"This is not a simple solution for the extraordinarily complex task of weight loss. I recognize that we don't have a simple solution, and surely this is not it," Frank said.

7.    Although this litigation cannot solve the "complex task of weight loss," the relief requested by Plaintiff and the Class Members may provide a simple solution to the ongoing and defiant false advertising practices of the makers of Lipozene.

8.    In 2005, this Court issued an Order for a Permanent Injunction against Defendants Henny Den Uijl, Bryan Corlett, and ORI for making similar types of false claims about weight loss products. The injunction was the result of an FTC Enforcement Action. According to a FTC press release:

The marketers of the dietary supplements FiberThin and Propolene have settled Federal Trade Commission charges that their misleading weight-loss claims violated federal laws. The principal defendants, located in Encinitas, California, are barred from making false claims about any dietary product in the future and are required to pay $1.5 million in consumer redress.

According to the FTC, the defendants used a television infomercial, short TV spots, and Web sites to market FiberThin and Propolene, two fiber-based dietary supplements they claimed would cause rapid, substantial weight loss without any need to diet or exercise. The supplements were marketed together with two purported metabolism enhancers, Excelerene and MetaboUp. FiberThin and Propolene purportedly contain glucomannan, while MetaboUp and Excelerene purportedly contain green tea, chromium, and bitter orange. The defendants charged $99.80 and $89.95, respectively, for 60-day supplies of FiberThin/MetaboUp and Propolene/Excelerene, and offered a "Take it Off, Keep it Off" automatic shipping program that would send consumers additional supplies for $29.95.

The defendants advertised these products through a 30-minute television infomercial that aired on numerous television stations, including The

8

Learning Channel, PAX Family Entertainment Network, Home and Garden TV, and CNBC.

In December 2003, the FTC announced its "Red Flag" campaign to educate members of the media about different types of bogus weight-loss advertising claims. The FTC's complaint charged that the defendants made "Red Flag" claims in their ads, including that the product would cause rapid, substantial weight loss (more than 2 pounds per week) without the need to diet or exercise; that weight loss would occur no matter what the consumer ate; and that weight loss would occur in all users. The FTC also alleged that the defendants used "expert endorsers" on their infomercial and other TV ads to make "Red Flag" claims.

The FTC's complaint named FiberThin, LLC and Obesity Research Institute, LLC; their owners, Henny Den Uijl and Bryan Corlett; and the "expert endorsers," James Ayres and Jonathan M. Kelley, M.D., as defendants.

The stipulated final order **_permanently bars_** the defendants from making the challenged "Red Flag" claims and unsubstantiated claims for any weight-loss product, dietary supplement, food, drug, or device, or misrepresenting any scientific study for the purposes of marketing a dietary supplement.

Defendants FiberThin, Obesity Research Institute, Henny Den Uijl, and Bryan Corlett are required to pay $1.5 million in **_consumer redress_**; **_the order contains a $41 million suspended judgment_**, which will become immediately due if it is found that the defendants misrepresented their financial situation. The order also contains standard recordkeeping provisions to assist the FTC in monitoring the defendants' compliance.

The Commission vote authorizing staff to file the complaint and proposed stipulated final order was 5-0. The complaint and stipulated final order were

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

filed in the U.S. District Court for the Southern District of California on June 14, 2005.[3]

9.      The 2005 FTC enforcement action was captioned *Fed. Trade Comm'n v. FiberThin, LLC, et al.*, No. 05-cv-01217 (S.D. Cal. 2005). Notably, the FTC's complaint requested that the Court grant "***such equitable relief that the Court finds necessary to redress injuries to consumers***." *See* FTC Compl., ECF No. 1 at 10 (A copy of the FTC Complaint is attached hereto as **Exhibit 1**).  Similarly, the Stipulated Final Judgment and Order granting Permanent Injunction is intended to benefit consumers who purchased Lipozene. *See* Stipulated Final J. & Order for Perm. Inj. 8, Jun. 17, 2005, ECF No. 2 ("Judgment is hereby entered against Defendants Fiberthin LLC, Obesity Research, Henny Den Uijl and Bryan Corlett, jointly and severally, in the amount of $1,500,000.00 *for consumer redress*) (A copy of the Stipulated Final Judgment is attached hereto as **Exhibit 2**). Plaintiff and the class members, as consumers who purchased Lipozene, are the intended third party beneficiaries of the Stipulated Final Judgment and are non-parties for whom relief was "granted in favor for" within the meaning of Federal Rule of Civil Procedure 71.

10.      Defendant's marketing of Lipozene violates the Stipulated Final Judgment and this Court's Permanent Injunction.  For example, **the Order _permanently enjoins_ Defendants from claiming that any weight loss product "enables users to lose weight or fat, or any specific amount of weight or fat, _without the need to reduce caloric intake_ or increase physical activity."** *See* Stipulated Final J. & Order for Perm. Inj., at 6. But Defendants continue to market Lipozene is in bold defiance of the Court's Order by making claims like "Lose Weight" with "No Diet Change" and "No Exercise Change."

---

[3] Press Release, *FTC Settles Claims with Marketers of FiberThin and Propolene,* Federal Trade Commission (Jun. 20, 2005), *available at* https://goo.gl/tufFeU.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS





11

11.    Moreover, the Court's Order enjoined Defendants from claiming that a weight loss product "causes substantial weight loss through ***blocking the absorption of fat and calories***." Stipulated Final J. & Order for Perm. Inj., at 6. But several Lipozene commercials depict a Lipozene pill literally absorbing body fat.



12.    Defendants have violated the Permanent Injunction, and will continue to violate this Court's injunction if the relief sought in this complaint is not granted. Indeed, the FTC's complaint noted that "**Absent injunctive relief by this Court, *the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public***." (FTC Compl.  at ¶ 26). As further discussed in this Complaint, Defendants have largely ignored the Court Ordered mandate as they have injured consumers, reaped

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

substantial unjust enrichment, and have harmed the general public by spreading fictions about responsible weight loss.

13.     Thus far, the FTC has done nothing to enforce the Court's Permanent Injunction even though millions of consumers have been harmed by Defendants' false advertising claims. Even worse, recent testing performed on Lipozene capsules show that the product is adulterated with undisclosed and potentially dangerous allergens even though the label explicitly represents that the product contains "no allergens."

14.     Plaintiff brings this action on behalf of all Lipozene Product purchasers and on behalf of the general public pursuant to California's "Private Attorney General" Doctrine. (Cal. Civ. Code 1021.5). This class action seeks to "enforce an important public right affecting the public interest." (*Id.*).

15.     Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiff seeks to represent a class of all purchasers of Lipozene Products, as further described herein, in an action for declaratory and corresponding equitable relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff and the proposed class seek a Judgment declaring the rights and relations of the parties under the 2005 Stipulated Final Judgment and Order for Permanent Injunction. Plaintiff and the Class respectfully request the Court to interpret any ambiguities in the Order and enter a Judgment declaring that Plaintiff and the Class are intended third party beneficiaries under the 2005 Order and therefore have standing to enforce its provisions under the principles of contract law or pursuant to Federal Rule of Civil Procedure 71, which provides that "when an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." The 2005 Order granted relief for the benefit of Plaintiff and the Class members who are now requesting a Judgment declaring that they have a legal right to enforce the 2005 Order for Permanent Injunction and may seek equitable relief in the form of "Consumer Redress" as contemplated by the 2005

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

Order. Plaintiff and the Class also seek an Order holding Defendants in civil contempt and corresponding "coercive" remedies and attorneys' fees.

16.     Alternatively or in addition to the "Intended Beneficiary Class" described above, Plaintiff seeks to represent certain classes of Lipozene purchasers, as further described in this Complaint, for Defendants' violations of California's  laws prohibiting fraud and deceit, the California Unfair Competition Law, California's Consumer Legal Remedies Act, California's False Advertising Law, and for Defendants' breaches of express and implied warranties, and for injunctive and equitable relief to redress Defendants' ill-gotten gains.

## JURISDICTION AND VENUE

17.     This Court has original and _exclusive_ jurisdiction over this matter pursuant to the Stipulated Final Judgment and Order for Permanent Injunction, Monetary and Other Equitable Relief that was entered on June 17, 2015 in *Fed. Trade Comm'n v. FiberThin, LLC, et al.*, No. 05-cv-01217 (S.D. Cal. Jun. 17, 2005). The Order provides that "this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order." Pursuant to 28 U.S.C.A. § 2201, Plaintiff and the Class are seeking a Judgment declaring the rights and relations of the parties with respect to the 2005 Stipulated Final Judgment and Order for Permanent Injunction and this action involves the construction, modification, and enforcement of the Order.

18.     This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(a), because the matter in controversy exceeds $5,000,000 exclusive of interests and costs, and this matter is a nationwide class action in which more than two thirds of the class members are citizens of States other than Defendants' state of citizenship. This case easily meets the $5,000,000 jurisdictional threshold because the average retail price of Lipozene is and was approximately $29.99 during the relevant time period. A Lipozene commercial that was aired by Defendants claims that "over 20 Million Bottles" of Lipozene have been sold based on IRI sales data

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

as of May 19, 2013. Now, however, Defendants have updated their own website (www.lipozene.com) and claim that "Over 25 Million Bottles" of Lipozene were sold based on IRI sales data as of October 5, 2015. There are a total of 927 days between May 19, 2013 and October 5, 2015, meaning that Defendants sell approximately 5,393 bottles of Lipozene per day. This means that from August 19, 2014 until the present, Defendants have sold approximately 2,502,352 bottles of Lipozene at a price of about $29.99 and have therefore generated over $75 Million in revenue from Lipozene sales. This figure does not even account for the value of the injunctive and equitable relief requested by Plaintiff and the Class Members in this complaint.

19.     This Court has personal jurisdiction over each Defendant because they are all either citizens of the state of California and each Defendant has continuous and systematic contacts with this District and the state of California as to essentially render them "at home" in this District. Moreover, each Defendant has purposefully availed himself, herself, or itself to the laws and benefits of doing business in this District and Plaintiff's claims arise out of each of the Defendants' forum related activities.

20.     Venue is proper because each Defendant "resides" in this District, and a substantial part of the events alleged in this Complaint giving rise to Plaintiff's claims, including the dissemination of the false and misleading advertising alleged herein, occurred in and were directed from this District. Moreover, this District is the only U.S. District Court that has jurisdiction over the interpretation, construction, and enforcement to the 2005 Stipulated Final Judgment.

## PARTIES

### Plaintiff Bozic

21.     Plaintiff Regina Bozic is and was at all relevant times a citizen of the state of Pennsylvania, residing in Tobyhanna, Pennsylvania. Plaintiff Bozic purchased the Lipozene product on at least one occasion around the spring of 2015 from a Walmart retail store located in Tobyhanna, Pennsylvania.  Plaintiff Bozic read and relied on certain

15

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

labeling statements made on the Lipozene packaging described in this complaint in deciding to purchase the product and Plaintiff Bozic also recalls seeing Lipozene commercials that she relied on in deciding to purchase the product.

22.    Plaintiff Bozic saw the Misrepresentations prior to and at the time of purchase and understood them as representations and warranties that the Lipozene product was safe and effective for weight loss and fat loss as advertised.  Ms. Bozic relied on the representations made on the Products' label in deciding to purchase the Product. Additionally, Plaintiff Bozic recalls seeing at least one of Defendants' television commercials that promoted the Lipozene and relied on the representations made in the commercial in deciding to purchase the Products.  These representations and warranties were part of her basis of the bargain, in that she would not have purchased Lipozene had she known the representations were false. She also understood that in making the sale, the retailer was acting with the knowledge and approval of and/or as the agents of Defendants. She also understood that the purchase involved a direct transaction between herself and the ingredient manufacturers because her purchase came with the ingredients manufacturers misrepresentations and warranties that the products were, in fact, safe and effective for weight loss and fat loss, among other things. Plaintiff Bozic would consider purchasing Lipozene again if the advertising statements made on the Product labels and in the Product advertisements were, in fact, truthful and represented in a manner as not to deceive consumers.

**Defendant Henny Den Uijl**

23.    Defendant Henny Den Uijl is a citizen of California and a resident of San Diego County.

24.    Defendant Den Uijl is a managing member/owner of Defendant ORI. On information and belief, Defendant Den Uijl is an owner or member of Defendants Continuity and Zodiac.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

25.    Defendant Henny Den Uijl is a signatory to the 2005 Stipulated Final Judgment with the FTC and is bound by the terms of this Court's 2005 Permanent Injunction.

26.    Defendant Henny Den Uijl develops, manufactures, promotes, markets, distributes, and/or sells the Lipozene Products to millions of consumers across the United States.

**Defendant Sandra Den Uijl**

27.    Defendant Sandra Den Uijl is the wife of Defendant Henny Den Uijl.

28.    Defendant Sandra Den Uijl is believed to be directly involved with management and operations of Defendants ORI, Continuity, and Zodiac. Plaintiff is further informed and believes that Defendant Sandra Den Uijl is the "vice president" of Defendant Continuity.

29.    Defendant Sandra Den Uijl develops, manufactures, promotes, markets, distributes, and/or sells the Lipozene Products to millions of consumers across the United States.

30.    Defendant Sandra Den Uijl has acted in concert with, and has provided material aid and assistance to Defendants Henny Den Uijl, Bryan Corlett, and ORI in their violations of the 2005 Stipulated Final Judgment and Permanent Injunction with knowledge of the Injunction and the intent to aid and assist others with violating the Permanent Injunction.

**Defendant Bryan Corlett**

31.    Defendant Bryan Corlett is a citizen of California and a resident of San Diego County. Defendant Corlett is the president of Defendant Continuity Products. Prior to 2010, Defendant Corlett was also an employee for Defendant ORI.

32.    Defendant Bryan Corlett is a signatory to the 2005 Stipulated Final Judgment with the FTC and is bound by the terms of this Court's 2005 Permanent Injunction.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

33.    Defendant Bryan Corlett develops, manufactures, promotes, markets, distributes, and/or sells the Lipozene Products to millions of consumers across the United States.

**Defendant Obesity Research Institute**

34.    Defendant Obesity Research Institute, LLC is a California limited liability company with its principal place of business in Encinitas, California. ORI was founded in 2003 and has been the distributor and seller of Lipozene and participated in creating the product formulation, packaging, and marketing of Lipozene. Defendant ORI is the owner of the Lipozene trademark and controls the content of several Lipozene related websites, including Lipozene.com and shop.lipozene.com.

35.    Defendant ORI is a signatory to the 2005 Stipulated Final Judgment and is bound by the terms of this Court's Order for Permanent Injunction.

36.    Defendant ORI develops, manufactures, promotes, markets, distributes, and/or sells the Lipozene Products to millions of consumers across the United States.

**Defendant Continuity Products, LLC**

37.    Defendant Continuity Products, LLC is a Delaware limited liability company with its principal place of business in Carlsbad, California.  Continuity Products is actively involved in the marketing, sales, branding and promotion of Lipozene.

38.    Plaintiff is informed and believes that Defendant Corlett is a managing member/owner of Continuity products and is further informed and believes that Defendant Sandra Den Uijl is the "vice president" of the company.

39.    Defendant Continuity has acted in concert with, and has provided material aid and assistance to Defendants Henny Den Uijl, Bryan Corlett, and ORI in their violations of the 2005 Stipulated Final Judgment and Permanent Injunction with knowledge of the Injunction and the intent to aid and assist others with violating the Permanent Injunction.

18

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

40.    Defendant Continuity develops, manufactures, promotes, markets, distributes, and/or sells the Lipozene Products to millions of consumers across the United States.

**Defendant National Weight Loss Institute**

41.    Defendant National Weight Loss Institute is a California Limited Liability Company. Plaintiff is informed and believes that Zodiac Foundation is an entity formed to conceal the ill-gotten gains that Defendants have been unjustly enriched with in connection with their sales of Lipozene.

42.    Defendant National Weight Loss Institute has acted in concert with, and has provided material aid and assistance to Defendants Henny Den Uijl, Bryan Corlett, and ORI in their violations of the 2005 Stipulated Final Judgment and Permanent Injunction with knowledge of the Injunction and the intent to aid and assist others with violating the Permanent Injunction.

**Defendant Zodiac Foundation**

43.    Defendant Zodiac Foundation is a California Limited Liability Company. According to the Secretary of State's Office, Defendant Henny Den Uijl is the registered agent for service of process for the company. Plaintiff is informed and believes that Zodiac Foundation is an entity formed to conceal the ill-gotten gains that Defendants have been unjustly enriched with in connection with their sales of Lipozene.

44.    Plaintiff is informed and believes that Defendant Sandra Den Uijl is the Chief Financial Officer of Defendant Zodiac Foundation.

45.    Defendant Zodiac has acted in concert with, and has provided material aid and assistance to Defendants Henny Den Uijl, Bryan Corlett, and ORI in their violations of the 2005 Stipulated Final Judgment and Permanent Injunction with knowledge of the Injunction and the intent to aid and assist others with violating the Permanent Injunction.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

**Defendant Conversion Systems**

46.     Defendant Conversion Systems is a Delaware Limited Liability Company. Defendant Conversion Systems is the operator and web administrator of the website Lipozene.com. In addition, Defendant Conversion Systems exercises control over the content that appears on the Lipozene Website and is entitled to shares of the profits that are generated through the Lipozene Website.

47.     Defendant Conversion Systems has acted in concert with, and has provided material aid and assistance to Defendants Henny Den Uijl, Bryan Corlett, and ORI in their violations of the 2005 Stipulated Final Judgment and Permanent Injunction with knowledge of the Injunction and the intent to aid and assist others with violating the Permanent Injunction.

48.     Defendant Conversion promotes, markets, distributes, and/or sells the Lipozene Products to millions of consumers across the United States.

49.     Attached hereto as **Exhibit 3** is a copy of a complaint that Conversion Systems filed against Defendant ORI showing that Conversion had a high degree of control over the marketing of Lipozene and that it had a "revenue sharing" agreement in which it was entitled to profits from the sales of Lipozene.

**Defendant Innotrac Corporation**

50.     Defendant Innotrac Corporation is a corporation organized under the laws of Georgia. Defendant Innotrac Corporation is the distributor of the Lipozene products, and on information and belief, is the host of the call centers for the 800 numbers that appear on Defendants' infomercials. Plaintiff is also informed and believes that Defendant Innotrac is produces the Lipozene infomercials and has control of the content of certain Lipozene advertisements and commercials. In addition, Plaintiff is informed and believes that Defendant Innotrac Corporation shares in the profits generated from the sales of Lipozene.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

51.    Defendant Innotrac Corporation has acted in concert with, and has provided material aid and assistance to Defendants Henny Den Uijl, Bryan Corlett, and ORI in their violations of the 2005 Stipulated Final Judgment and Permanent Injunction with knowledge of the Injunction and the intent to aid and assist others with violating the Permanent Injunction.

## JOINT LIABILITY

52.    In 2012, an article in the San Diego Reader titled *Fat Claims, Fat Chance* featured a story about Lipozene and the people behind it:

A web of interrelated North County enterprises — known for high-pressure TV ads — professes its products will help you peel off body fat. ***But to conceal what it is doing, this group of purported health-care-product distributors has gotten rather bloated itself.***

For example, if you go to California secretary of state records, you will find these interlinked limited liability companies registered: Continuity Products, Obesity Research Institute, Pounds Lost, Zylotrim, Dencor Research, Cell Genetics, Appetrol, Zodiac Foundation, Cyvita, Finance Marketing, Hdusdu, and Beau Cheveux. The last two have been canceled.

By touting alleged "clinical studies" that back up their claims, the promoters have sold a slew of so-called dietary and health products: Lipozene, Cyvita, I-PAK, Excelerene, MetaboUp, Lumanex, Appetrol, Vita 26, Metabo Pro, and Pounds Lost, to name a few.

The companies are run by Henny Den Uijl and Bryan Corlett, although some of the entities may be run by one or the other, not jointly. The companies have various headquarter locations: Carlsbad, Encinitas, Rancho Santa Fe, and Reno, Nevada. The two principals and the in-house lawyer, Joshua Weiss, did not return repeated phone calls.[4]

---

[4] *See* Don Bauder, *Fat Claims, Fat Chance*, SAN DIEGO READER (Feb. 22, 2012), *available at* http://goo.gl/kEzkv7.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

53. Attorney Joshua Weiss was employed as the in-house counsel for Defendants ORI and Continuity apparently since around 2006 until last year. According to the U.S. Patent and Trademark Office, **Mr. Weiss was listed as the attorney of record for Obesity Research Institute when it registered the Lipozene trademark on September 29, 2005—*just three months after Defendants were enjoined from making false weight loss product claims.*** Mr. Weiss has sued Defendants Den Uijl, ORI, Continuity, and Zodiac in the California Superior Court for the County of San Diego alleging employment harassment and discrimination. A copy of the complaint in the *Weiss* lawsuit is attached hereto as **Exhibit 4**. The allegations made in Mr. Weiss' complaint are made on Mr. Weiss' personal knowledge as a long time, former employee of Defendants. The allegations in Mr. Weiss' complaint provide insight into Defendants' business operations.

54. Plaintiff and the proposed Class incorporate by reference the highlighted paragraphs of Mr. Weiss' complaint attached hereto as **Exhibit 4** as they pertain to the joint liability of Defendants.

55. "Henny Den Uijl has been associated with thirteen companies, according to public records. The companies were formed over an eight-year period with the most recent being incorporated three years ago in September of 2012. Six of the companies are still active while the remaining seven are now listed as inactive."[5]

---

[5] *See* Profile of Henny Den Uijl, *Corporation Wiki,* https://goo.gl/Nd5vEq.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS



56.     "Bryan Corlett has been associated with seven companies, according to public records. The companies were formed over a ten year period with the most recent being incorporated two years ago in March of 2014. Three of the companies are still active while the remaining four are now listed as inactive."[6]

---

[6] *See* Profile of Bryan Corlett, *Corporation Wiki*, https://goo.gl/FWyRFU.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

## I.     The Lipozene Enterprise

57.    "The Lipozene Enterprise" refers to an unincorporated association of natural persons, limited liability companies, corporations, trusts, associations, and other business entities who have a community of interest in furthering the sales of Lipozene products. To the best of the Plaintiffs knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, Plaintiff will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to make a *prima facie* showing that the following natural persons and entities are members of the Lipozene Enterprise: Bryan Corlett, Henny Den Uijl, Sandra Den Uijl, Continuity Products, LLC, Institute of Clinical Research, LLC, Finance Marketing LLC, Cell Genetics, LLC, Zodiac Foundation LLC, Wohu VII, LLC, Obesity Research, LLC, Zylotrim, LLC,  National Weight Loss Institute, LLC, Innotrac Corporation, Conversion Systems, and DOES 1-100 ("Members of the Enterprise").

58.   DOES 1-100 are unknown members of the Lipozene Enterprise. Plaintiff is ignorant of the names of DOES 1-100, but alleges that DOES 1-100 are responsible for the unlawful conduct alleged herein. When the true names of DOES 1-100 are discovered, Plaintiff will amend her complaint accordingly.

59.    The Members of the Enterprise are "persons" within the meaning of California Corporations Code 18030.

60.     The  Members of the Enterprise is  "a unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not" as within the meaning of California Corporations Code 18035.

61.    "The Lipozene Enterprise" is a "association" and "other organization of persons" within the meaning of California Business and Professions Code Section 17201.

## II.    Alter-Ego Liability

62.    Defendants ORI, Continuity, Zodiac, and National Weight Loss Institute are the alter egos of Defendants Henny Den Uijl, Sandra Den Uijl, and/or Bryan Corlett.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

"Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 83 Cal. App. 4th 523, 83 Cal. 4th 523 (Ct. App. 2000). "The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." *Id.*

63.    "In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *McGrath v. Superior Court of San Diego County*, No. D056538 (Cal. Ct. App. May 25, 2010). "Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Id.*

64.    Defendants have a unity of interest and on information and belief and an opportunity for further discovery, Plaintiff alleges that Defendants comingle funds and assets of each entity, they hold out that one entity is liable for the debts of the other, and the entities use the same offices and employees and use of the entities as a mere shell or conduit for the affairs of the individual Defendants.

65.    The Services Agreement found at **Exhibit 3** shows that Defendant ORI goes by the name "Continuity" when entering into contracts. **Exhibit 3** also shows that "Continuity" has a role in distributing revenue earned from the Lipozene website.

### III.   Joint Venture

66.    Each and every Defendant named in this complaint have combined their property, skill, and knowledge to carry out a single business undertaking in that they produce, promote, and distribute weight-loss supplements with a community of interests in that they use a common marketing scheme that involves marketing through television infomercials and online to promote the Lipozene Products.  Each and every Defendant has formed an agreement, either explicitly or implicitly by their conduct, to jointly share the control, profits, and losses of Joint Venture Enterprise and the Joint Venture Enterprise is a business undertaking in that it was formed to profit from the fraudulent sales of supplement products.

### IV.   Agency Allegations

67.    At all times herein mentioned, Defendants, and each of them, were an agent of each of the other Defendants, and in doing the acts alleged herein, were acting within the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts."

68.    At all times herein mentioned, each member of each joint ventures described above, were agents of the joint ventures and the other members of the joint ventures described above, and in doing the acts alleged herein, were acting within the ordinary course of business of the joint ventures or with the authority or ratification of the joint ventures.

### V.   Civil Conspiracy Allegations

69.    During the relevant class periods, Plaintiff and the class members were harmed by Defendants' unlawful business practices and fraudulent representations described herein because each Defendant was part of a conspiracy to commit fraud or and other deceptive and unlawful acts. Each Defendant intentionally entered into an

26

agreement in writing, orally, or through their conduct with at least one or more Co-Defendants to commit wrongful violations of the law as described in Plaintiff's request for relief section, *infra*. Each Defendant was aware of the fact that each co-conspirator Defendant planned to commit fraud and other unlawful acts. Each Defendant intended that the fraud and other unlawful acts be committed and each Defendant overtly acted in furtherance of the goals of said civil conspiracies.

## VI.    Aiding and Abetting Allegations

70.    During the relevant class periods, each and every Defendant knew that each and every other Defendant were engaged in the unlawful acts subject to this complaint. Each Defendant gave substantial assistance or encouragement to one or more co-Defendants, who committed the predicate unlawful acts, by supplying those Defendants with the means or instrumentalities to commit the unlawful acts, which were substantial factors in causing harm to Plaintiff and the Classes.

## THE MARKETING AND SALES OF LIPOZENE

71.    The Lipozene marketing campaign has been highly successful and effective over the years by using the same marketing format that was used when the product was first launched in 2006. Indeed, the Lipozene packaging and the overall marketing message have remained virtually consistent throughout the years and is still being used to this very day, including on the front label of the Lipozene product.

72.    For purposes of this section, each statement that appears in quotation marks ("") below create affirmative representations about the Products and also create express and implied warranties that were relied on by Plaintiff and the Class members in deciding to purchase the products.

73.    These statements will from now on be referred to in this Complaint as the "Express Warranties."

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

## I.             Misleading Packaging

74.    At all times during the class periods defined herein, Defendants made and continue to make false, misleading, or fraudulent statements on the packaging and labeling of Lipozene, including, *inter alia*, "Clinical Study Proves: 78% of weight lost is pure body fat!" "Helps Reduce Weight" "Helps reduce body fat."





CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

75.    At all times during the class periods defined herein, Defendants made and continue to make false, misleading, or fraudulent statements on the packaging and labeling of Lipozene, including "Clinical Study Proves: 78% of weight lost is pure body fat!" "Helps Reduce Weight" "Helps reduce body fat."

a) "Lipozene"

b) "Obesity Research Institute"

c) "Lose Pure Body Fat"

d) "Clinical Study Proves: 78% of weight lost is pure body fat!"

e) "Maximum Strength"

f) "Amorphophallus konjac 1500mg per dose"

g) "Clinically Proven"

h) "Helps Reduce Weight"

i) "Helps Reduce Body Fat"

j) "Safe and Effective"

k) "Product of Excellence"

l) "Dietary Supplement"

m) "In a double blind study, not only did participants lose weight but 78% of each pound lost was pure body fat!"

n) "No Known allergens in this product"

o) "As a dietary supplement for maximum results take 2 capsules 30 minutes before meals up to three times per day with at least 8 oz. of water"

p) "Proprietary blend [of] 1500mg [of] Amorphophallus Konjac (from Konjac Root)."

76.    Each of the above statements are false and misleading because the product is not clinically proven to help users lose weight and Amorphophallus Konjac used in Lipozene is not pure, but rather adulterated with undisclosed substances. Moreover, the product contains allergens like sulfites despite being labeled as "no known allergens."

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

77.     Additionally, the Lipozene product's label contains the following false and misleading graphic representations:

    a.  A picture of a ribbon that contains the statement "product of excellence," and "obesity research institute" that implies that the product somehow won an award for being excellent and that such an award was given by an independent "obesity research institute."

    b.  A picture of the Lipozene pill absorbing fat.

78.     Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons alleged herein.

## II.     Misleading Website

79.     The Lipozene website also makes several false and misleading statements regarding the benefits of the Lipozene product. Significantly, the statements on the Lipozene website state that with Lipozene you can **"Still eat your favorite foods"** and that **"No change in exercise is required."** Moreover, Defendants claim that with Lipozene there will be **"No Strict Diets"** and that you will **"Feel Full Faster and For Longer."**

80.     The Lipozene website claims that "Lipozene Really Works" because its active ingredient has the following effect on the human body:

> Lipozene's active ingredient is a super-fiber extracted from the root of the Konjac plant. This super-fiber's ability to profoundly absorb water and expand in size suggests that it may swell in your stomach and make you feel fuller faster and longer; therefor [*sic*] you will eat less and lose weight. Studies have shown this super-fiber can improve glucose control, lower cholesterol. Its is believes [*sic*] that lower insulin levels may help your body use your stored fat for energy and also result in decreased storage of dietary fat.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

Lipozene® does not contain caffeine or other stimulants that can leave you feeling jittery. Its active ingredient has been used in the Orient for 1,000's of years. Lipozene® is safe when taken as directed. Lipozene® has helped countless people meet their weight loss goals, and it can help you too!

81.    The Lipozene website further touts the purported fact that Lipozene is "clinically proven" to help users lose weight:

Numerous studies have proven that the active ingredient in Lipozene® will help you lose weight. Researchers conducted an independent clinical study on Lipozene's exclusive formula, and found that not only did the participants lose weight, but 78% of each pound lost was pure body fat! Even more amazing was that study participants were not asked to change their daily lifestyle, meaning they were not asked to change what they ate or how they exercised.

82.    The Lipozene website also has numerous fake testimonials from supposed customers.



31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20





21       83.    Attached hereto as **Exhibit 5** are exemplars from Lipozene.com that were

22   obtained from the Internet Archive's "Wayback Machine." Plaintiff incorporates by

23   reference each of the advertising statements made in **Exhibit 5**.

24       84.    Each of the above-quoted statements are false, misleading, deceptive, and

25   unlawful for the reasons explained herein. Moreover, each of the above-quoted

26   statements create express or implied warranties and Defendants have breached said

27   warranties for the reasons alleged herein.

28

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

### III.    Misleading Infomercials

85.    Defendants also advertise Lipozene on television infomercials that further state user's can **"lose weight without changing your lifestyle" or with "No Diet, No Exercise."**



Lipozene TV Commercial, 'Lose Pure Body Fat',  http://ispot.tv/a/701n



Lipozene TV Commercial, 'Water vs. Fat', http://ispot.tv/a/74aH

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21
22
23
24
25



26

Lipozene TV Commercial, 'Weight Loss Mountain', http://ispot.tv/a/Aq14

27
28

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS





35

I.    **THE ACTIVE INGREDIENT IN LIPOZENE IS NOT "CLINICALLY PROVEN" TO HELP USERS LOSE WEIGHT**

86.    Defendants have made contradictory statements as to which scientific studies support Lipozene's claims of being "clinically proven." A screenshot from the Lipozene website taken in 2008 shows that Lipozene has made the "clinically proven" claim since the product was first launched. However, the website does not provide any citations to scientific studies that support the "clinically proven" claim.

87.    Sometime in 2009, the Lipozene website was changed. A screenshot from December 11, 2011 shows that Defendants now claimed that "Lipozene Diet pills are backed by multiple clinical studies." A 2009 press release from Defendant ORI stated:

   Obesity Research Institute LLC today announced multiple clinical studies prove the active ingredient in Lipozene is safe and effective for weight loss. Lipozene's active ingredient, Glucomannan, has been studied by researchers at Georgetown University and University of Texas, to name a few.

   Lipozene consists of a proprietary blend of two unique Glucomannans, providing a superior viscosity score. This 100% natural highly viscous fiber expands in the stomach, providing a sense of fullness. Clinical studies on Lipozene's proprietary blend show majority of weight loss is from body fat.

   In a randomized, double-blind, placebo-controlled study using Lipozene's proprietary blend, the active group experienced weight loss and 78% of the weight lost was pure body fat. More information is available at www.lipozene.com.

88.    Sometime around February 6, 2012, the Lipozene website was changed to state that "Lipozene diet pills are backed by a major university clinical study." Shortly thereafter, sometime around August 28, 2012, the Lipozene website was changed again to refer to "a double blind, placebo controlled study," where "not only did participants

lose weight, but 78 percent of the weight lost was pure body fat." The website then claimed: "What's even more amazing, is that people were not asked to change their daily lives." The website was then changed again to refer to "multiple clinical studies" and then changed it again to refer to a just single "independent study."

89.   Finally, sometime around February of 2014, the Lipozene website was again changed to include more information about the clinical studies. This time, three purported studies were published on the website under a heading that read "Numerous Clinical Studies confirm Lipozene's active ingredient, Glucomannan, is safe and effective for weight loss and body fat loss." This webpage is still in operation as of the date of filing this complaint at lipozene.com/clinical-studies. However, the current version of the Lipozene homepage references only a single eight-week clinical study, where "the active group lost 4.93 more pounds than the placebo group and 3.86 pounds was pure body fat." But none of the studies referenced on lipozene.com/clinical-studies support that claim. Furthermore, none of the studies are "University" studies from either Georgetown University or the University of Texas and none of the studies are "independent." See **Exhibit 5**.

90.   The first "study" is by DE Walsh et al. titled Effect of Glucomannan on Obese Patients: A Clinical Study ("Walsh Study").   This study was published in the Journal of Obesity in 1984 and appears to be sponsored by General Nutrition Corporation. The study was conducted by dividing "20 obese women" into two groups where one was given "purified glucomannan" and the other was given "starch" as a placebo. The study itself notes that the reported results are not statistically significant.

91.   The second "study" cited on the Lipozene website is not actually a study at all. Instead, it is a "critical review" of other studies that were performed on the efficacy of Glucomannan.   Furthermore, this study actually cites the Walsh Study and points out that it is unclear why it "showed no reductions in body weight when presumably many of the participants were overweight."   The critical review then concludes that "[b]efore

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

GM (Gluconoman) can be safely recommended for widespread use, however, additional trials of standardized preparations are needed to extend extant data on its safety, efficacy, and weight- reducing mechanisms of action."

92.     The third "study" citied on the Lipozene website likewise does not lend support to the claim that Lipozene is "clinically proven" to help users lose weight without diet or exercise. Instead, this is actually a "meta-analysis" of other studies and not a study itself.    Moreover, this meta-analysis notes that the Walsh study made a critical miscalculation. Specifically, the *Walsh* Study erred by using the mean "for the entire study cohort" instead of the baseline for each of the groups when it came to measuring lipids in the blood.    Finally, the meta-analysis notes that the studies analyzed included those that have potential publication bias and that "larger individual studies following patients for longer periods of time and evaluating both safety and efficacy are warranted and needed."

93.     However, some of the same authors did do a follow-up clinical study and concluded that there was no significant weight loss for users taking Glucomannan compared to placebo.  In sum, none of the "studies" relied on by Defendants support the claim that Lipozene is "clinically proven" to help users lose weight as they are fundamentally flawed or statistically insignificant.

## IV.    THE FDA CALLED LIPOZENE "MISBRANDED" AND "ADULTERATED"

94.     On September 15, 2014, the United States Food and Drug Administration sent a "warning letter" to West Coast Laboratories, Inc. in Gardenia, California. Plaintiff and the Class are informed and believe that West Coast Laboratories, Inc. is an ingredient supplier for the Lipozene product.

95.      The FDA stated that that the lab "did not conduct identity testing" for amorphophallus Konjac Root used in the manufacturing of 'Lipozene.'"

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

96.    The FDA warned West Coast that Lipozene and Metabo-Up are "misbranded" and "adulterated" under the Food Drug and Cosmetics Act. Specifically, the FDA stated "With respect to your dietary supplement products, our inspection of your facility revealed that you failed to comply with the Current Good Manufacturing Practice (CGMP) regulations in Manufacturing, Packaging, Labeling, or Holding Operations for Dietary Supplements, found in Title 21 of the Code of Federal Regulations, Part 111 (21 CFR part 111). These violations cause your dietary supplements including, but not limited to, "Nano Cal/Mag" (capsules), "Lipozene" (capsules), "Metabo Up Plus" (tablets) and "Prenatal Formula with Folic Acid" (capsules) products, to be adulterated within the meaning of section 402 (g)(1) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 342 (g)(1)] in that they have been prepared, packed, or held under conditions that do not meet CGMP regulations for dietary supplements."

97.    A copy of the FDA warning letter is attached hereto as **Exhibit 6**. Plaintiff and the class members incorporate by reference all allegations in the letter that pertain to Lipozene.

## V.    LIPOZNE IS ADULTERATED WITH ALLERGENS AND "CHEAP KNOCK OFF INGREDIENTS"

98.    In 2015, the former ingredient supplier FiberThin sued Defendant Obesity Research for false and misleading advertising of Lipozene.

99.    As alleged in the Fiberthin complaint:

From about December 2014 to January 2015, Japan Food Research Laboratories performed a chemical analysis of Lipozene Lot No. 424597, which had been purchased off the shelf from drug stores in the United States exactly as a regular consumer would purchase the product. The results of the analysis demonstrated that a 100-gram sample of Lipozene contained 0.6 grams of Galactose, and 0.2 grams of Glucuronic acid. Galactose and Glucuronic acid are chemical markers

of Xantham Gum, which is used to "spike" cheap glucomannan knock-off products."

Laboratory testing performed by Shimizu from April to November 2014 further demonstrates Lipozene contains quantities of sulfites that exceed the regulatory threshold for labeling, such that Lipozene should be labeled with an allergen warning. But Obesity Research falsely represents on Lipozene's label that there are "No known allergens in this product."

100.  Attached hereto as **Exhibit 7** is a copy of Fiberthin's Counterclaims and relevant exhibits to that complaint. Pursuant to Federal Rule of Civil Procedure 10, Plaintiff adopts by reference the highlighted portions of **Exhibit 7** as if they were alleged herein.

## VI.   VIOLATIONS OF THE STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION

101.  In 2005, the U.S. Federal Trade Commission ("FTC") instituted an enforcement action against Defendants involving the false and deceptive adverting of Fiberthin, Metabo-up, Propolene, and Excelerene. The FTC's complaint sought to "Permanently enjoin Defendants from violating Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in connection with the offer, sale, advertising, or other promotion or distribution of weight-loss products, or any food, drugs, dietary supplements, or other products, services, or programs" **AND** the FTC sought an additional remedy in the form of an order granting "**such _equitable relief as the Court finds necessary to redress injury to consumers_ resulting from Defendants' violations of the FTC Act_, including, but not limited to,_ rescission of contracts and restitution, and the disgorgement of ill-gotten gains."** (FTC Compl., _Ex._ 1 at p. 14).

102.  The FTC complaint further notes that the action was brought on the behalf of consumers who purchased the products: "Consumers throughout the United States have suffered and continue to suffer substantial monetary loss as a result of Defendants' unlawful acts or practices. In addition, the Defendants have been unjustly enriched as a

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

result of their unlawful practices. **Absent injunctive relief *by this Court*, the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public**." (FTC Compl., *Ex.* 1 at ¶ 26).

103.   On June 17, 2005, this Court approved the Stipulated Final Judgment and entered an Order for Permanent Injunction, Monetary and other Equitable Relief (the "Order for Permanent Injunction"). A copy of the Order for Permanent Injunction is attached hereto as Exhibit 2 and is also available through the PACER database. *See* ECF No. 2, *Fed. Trade Comm'n v. FiberThin, LLC, et al.*, Case No. 05-cv-01217 (S.D. Cal.). 104.   The Order permanently enjoins Defendants ORI, Henny Den Uijl, Brian Corlett and all other persons or entities acting in concert with them from expressly or implicitly making the following advertising claims about any supplement product that is "substantially similar" to the products at issue in that case:

> A. Causes rapid or substantial weight loss without the need to reduce caloric intake or increase physical activity;
>
> B. Enables users to lose as much as 8 pounds or more per month without the need to reduce caloric intake or increase exercise;
>
> C. Works for all users; or
>
> D. Causes substantial weight loss through blocking the absorption of fat or calories.

105.   The Order defines a "substantially similar product" as one "that has one or more of the following active ingredients: glucomannan, propol, konjac, konjac root, chromium, green tea, guarana seed, oolong tea, kola nut, bitter orange, cayenne, platycodon grandiflorum, or any extracts of these ingredients."

106.   Furthermore, the 2005 Order enjoins Defendants ORI, Henny Den Uijl, Brian Corlett and all other persons or entities acting in concert with them from expressly or implicitly making the following advertising claims about any "covered product":

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

"A.   That such product or service causes weight loss;

B. That such product or service enables users to lose weight or fat, or any specific amount of weight or fat, without the need to reduce caloric intake or increase physical activity;

C. That such product or service blocks the absorption of fat or calories or increases metabolism; or

D. About the health-related benefits, performance, efficacy, safety, or side effects of such product or service.

unless the representation is true, non-misleading, and, at the time it is made, Defendants possess and rely upon competent and reliable scientific evidence that substantiates the representation."

107.   A "covered product" is defined as "**any weight loss product, dietary supplement**, food, drug, or device."

108.   Finally, the Order permanently enjoins Defendants ORI, Henny Den Uijl, Brian Corlett and all other persons or entities acting in concert with them from expressly or implicitly misrepresenting "the existence, contents, validity, results, conclusions, or interpretations of any test or study."

109.   Significantly, the Stipulated Final Judgment was indented to benefit Plaintiff and the Class Members, the consumers who purchased the products:

All funds paid pursuant to this Order shall be deposited into an account administered by the Commission or its agent **to be used for equitable relief, including but not limited to <u>consumer redress</u>,** and any attendant expenses for the administration of such equitable relief

110.   Less than one year after Defendants ORI, Henny Den Uijl, and Brian Corlett entered into the consent decree with FTC, they boldly launched the Lipozene- a product that Defendants claimed has now sold over 25 million bottles. The marketing and sales

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

of Lipozene violates the Court's Permanent Injunction in several respects, including but not limited to the following:

    a. "LOSE PURE BODY FAT"

    b. "Helps Reduce Weight"

    c. "Helps Reduce Body Fat"

    d. "What's even more amazing is that people were not asked to change their daily lives. Just take Lipozene, that's it."

    e. "Lipozene is safe and effective"

    f. Lose weight "***Without Diet and Exercise***"

    g. "You can eat pizza, burgers, pasta, whatever you normally would."

    h. "Your body will burn more fat."

    i. "Reduce cholesterol"

    j. "Regulate Blood Sugar"

## VII. THE NATIONAL ADVERTISING DIVISION ACCUSES DEFENDANTS OF MISLEADING CONSUMERS

111. On December 23, 2014, the Council for Responsible Nutrition challenged Lipozene advertising claims under procedures established by the industry "self-regulatory" group called the National Advertising Division ("NAD"). Specifically, the following claims were challenged:

- "Clinically proven: Helps reduce weight, Helps reduce Body Fat, Safe and Effective."

- "Lipozene is an all-natural weight loss supplement that is clinically proven to help you lose weight and pure body fat."

- "When taken prior to eating, Lipozene works to help you feel full faster, so you eat less!" It's that easy!"

- "In an independent study, not only did participants taking Lipozene lose weight, but 78% of each pound lost was pure body fat."

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

- "What's even more amazing is that participants were not asked to change their daily lifestyle.  Just take Lipozene."
- "Lipozene has effectively helped millions of people meet their weight loss goals and it can help you too!"
- "Check out these studies that prove scientifically that the active ingredient in Lipozene helps you lose weight!"
- ""Lipozene creates a dietary fiber gel in your stomach that makes you feel full so you are able to eat less without feeling hungry."
- "I've lost 6lbs in my first week and my progress is better and better. I only weigh myself once a week but I'm on week two and can see the differences.  Can't wait till my next weigh in to see further progress! – Belleville, Illinois"
- "Love it.  I was 269.8 to 178.8 in  three months.  I stopped it and it's been five months and I have not gained the weight… . – Allentown, Pennsylvania"

112.  The Council for Responsible Nutrition argued that many of the advertiser's claims "imply that Lipozene may be used for disease prevention and treatment because of references to diabetes, obesity, and high cholesterol."

113.  Attached hereto as **Exhibit 8** is a copy of the letter from NAD. Pursuant to Federal Rule of Civil Procedure 10, Plaintiff adopts by reference the highlighted portions of **Exhibit 8**.

## CLASS ACTION ALLEGATIONS

114.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following Classes as initially described in this section. Plaintiff reserves the right to amend all class definitions at class certification based on further discovery and/or changes in state law. Plaintiff has alleged the class definitions upon good faith as to the law and on information and belief as to the facts.

115.  Pursuant to Federal Rule of Civil Procedure 23(c)(4), Plaintiff alleges that it is appropriate for certain causes of action alleged in this complaint to be maintained as

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

"divisible class actions" with respect to particular issues. At the appropriate time, Plaintiff may move the Honorable Court for an order bifurcating class certification as it may be in the interests of justice for the Court to decide whether certain claims may proceed as a class action pursuant to Rule 23(b)(2) before it is appropriate to decide whether other claims may proceed as a class action pursuant to Rule 23(b)(3).

116.   Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff alleges that she may seek certification of the following Classes, and/or Subclasses or alternative Classes:

### I.   **The Intended Beneficiary Class**

117.   Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings Count I alleged in this action on behalf of herself and the Intended Beneficiary Class initially defined below.

> All purchasers of the Lipozene Products in the United States for personal or household use and not for resale from the time when the Products entered into the stream of commerce until the time that a final judgment is entered, or within the statute of limitations period, or as otherwise ordered by the Court.

118.   Excluded from the Third Party Beneficiary Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case. Also excluded from the Third Party Beneficiary Class are any persons or entities who have "acted in concert" with Defendants in violating this Court's 2005 permanent injunction.

119.   Count I of this complaint, *infra*, is brought by Plaintiff and the Intended Beneficiary Class. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Plaintiff and the class members respectfully request this Court to enter a judgment

45

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

declaring that Plaintiff and the Class Members are intended third-party beneficiaries to the 2005 Stipulated Final Judgment. Additionally, Plaintiff and the Class Members are requesting this Court to enter a judgment declaring that the Court's 2005 Order for a Permanent Injunction "grants relief" for Plaintiff and the Class Members within the meaning of Federal Rule of Civil Procedure 71. Plaintiff and the Class Members also seek ancillary equitable relief that will effectuate any such Declaratory Judgment that is issued by this Court.

120.   Certification of the Intended Beneficiary Class pursuant to the provisions of Federal Rule of Civil Procedure 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds generally applicable to the Intended Beneficiary Class, thereby making declaratory relief appropriate with respect to the Class as a whole.

121.   Pursuant to Federal Rule of Civil Procedure 23(a)(1), the proposed Declaratory Relief class is so numerous that individual joinder of all the members is impracticable.

122.   Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are questions of law or fact common to the Intended Beneficiary Class and the Declaratory Judgment claim alleged in Court I of this Complaint is dependent upon a common contention of such a nature that it is capable of class wide resolution. Determination of the truth or falsity with respect to the rights and remedies of Plaintiff and the Class members will with respect to the 2005 Stipulated Final Judgment and Order issuing a Permanent Injunction will resolve issues that are central to the validity of the claims for relief in one stroke. Such common issues include, but are not limited to, the following:

   a) Whether Plaintiff and the Class members have rights and remedies as intended third-party beneficiaries to the 2005 Stipulated Final Judgment;

   b) Whether the Court's 2005 Order issuing a Permanent Injunction was "granted in favor of" Plaintiff and the Class Members within the meaning of Federal Rule of Civil Procedure 71;

46

c) Whether a Declaratory Judgment would resolve the issues presented in (a) and (b) above by declaring the rights of Plaintiff and the Class Members with respect to their ability to proceed as a certified class of consumers when seeking enforcement of their rights and remedies as Intended Beneficiaries;

d) Whether the requested Declaratory Relief would confer standing upon Plaintiff and the Class to initiate civil contempt proceedings in accordance with Rule 71 of the Federal Rules of Civil Procedure;

e) Whether the requested Declaratory Relief would confer standing upon Plaintiff and the Class to pursue certain claims for relief under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) arising from Defendants' alleged non-compliance with the Court's 2005 Permeant injunction;

f) Whether it would be appropriate for this Court to issue an ancillary Order to enforce compliance with its 2005 Order for a Permanent Injunction, which may include a *sua sponte* Order to Show Cause as to why Defendants should not be held in civil contempt for violating of the 2005 Permanent Injunction;

g) Whether any other corresponding injunctive or equitable relief would be appropriate to effectuate a Declaratory Judgment in favor of Plaintiff and the Class, including an Order directing Defendants to bear the costs of notice to the class members and whether an award of attorneys' fees and costs would be appropriate should this action become a catalyst that leads to enforcement of the 2005 Permanent Injunction against Defendants, thus providing substantial benefits to a large class of consumers and the general public;

123. Pursuant to Federal Rule of Civil Procedure 23(a)(3), the Declaratory Judgment claims and defenses of Plaintiff are typical of the claims and defenses of the members of the Intended Beneficiary Class.

124. Pursuant to Federal Rule of Civil Procedure 23(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the Intended Beneficiary Class. Plaintiff

47

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

has retained counsel with substantial experience in handling complex class action litigation, including false advertising claims involving dietary supplement products in particular. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

125.   Pursuant to Federal Rule of Civil Procedure 23(b)(2), Defendants have acted or refused to act on grounds that apply generally to the Intended Beneficiary Class and final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## II.   The Consumer Fraud Classes

126.   In addition, or in the alternative to the Intended Beneficiary Class described above, Plaintiff may seek certification of the following Classes (or alternative classes or Subclasses) pursuant to the provisions of Federal Rule of Civil Procedure 23(b)(3), or alternatively, pursuant to Rule 23(b)(2):

> All purchasers of Lipozene in the United States for personal or household use and not for resale from August 19, 2014 until the date of class certification, or as otherwise deemed appropriate by the Court.

> Alternatively, purchasers of Lipozene in the United States for personal or household use and not for resale during the applicable statute of limitations period not to exceed four years prior to Plaintiffs filing of this complaint.

127.   Plaintiff reserves her right to amend the class periods stated above and will seek such an amendment of her class definitions should the Final Judgment in *Duran* v. *Obesity Research et al.* be overruled by the California Court of Appeal, or is otherwise held to be non-binding on the *Duran* class members.   *See Duran v. Obesity Research Institute*, No. D067917 (Cal. App. 4th). Although the *Duran* appeal prevents the Final Judgment from having a preclusion effect under California law, Plaintiff is not seeking to certify the Consumer Fraud Classes described above in a way that would overlap with the *Duran* Final Judgment.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

128. Excluded from the Consumer Fraud Classes are governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case

129. Members of the Consumer Fraud Classes are so numerous that their individual joinder herein is impracticable.

130. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.

131. The claims of the named Plaintiff are typical of the claims of the Consumer Fraud Classes in that Plaintiff was exposed to Defendants' false and misleading marketing and purchased Lipozene as a result of that marketing.

132. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

133. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

134.   A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.

## COUNT I

### CLAIM FOR A DECLARATORY JUDGMENT
**(28 U.S.C. § 2201 AND FED. R. CIV. P. 57)**
**BY PLAINTIFF ON BEHALF OF THE INTENDED BENEFICIARY CLASS**
*-against-*
**ALL DEFENDANTS**

135.   Plaintiff and the Intended Beneficiary Class hereby re-allege and incorporate by reference the allegations set forth in the above paragraphs as though fully set forth herein.

136.   This claim requests a declaration of rights and the legal relations of the parties to this action with respect to the 2005 Stipulated Final Judgment in accordance with the Declaratory Judgment Act, 28 U.S. Code § 2201.

137.   **Plaintiff and the Class request a declaration of their rights as Intended Beneficiaries to the *2005 Stipulated Final Judgment contract* that was entered into between Defendants and the Federal Trade Commission.** Significantly, "[E]nforcement of consent decrees is governed by the established contract principle that

non-parties, as intended third party beneficiaries, may enforce an agreement." *Hook v. State of Ariz. Dept. of Corrections*, 972 F.2d 1012 (9th Cir. 1992) (citing Restatement (Second) of Contracts § 304 & cmt. a-b (1981); *see also United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005) ("Without question courts treat consent decrees as contracts for enforcement purposes. A consent decree, like a contract, must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree.").

138.   **Plaintiff and the Class request a declaration of their right to enforce Defendants' compliance with the 2005 *Order Granting a <u>Permanent Injunction</u> pursuant to the authority of Federal Rule of Civil Procedure 71*.** According to Rule 71, " When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." Such procedure includes initiation of civil contempt proceedings under Federal Rule of Civil Procedure 70(e). There appears to be a disagreement amongst some courts as to whether a non-party has standing to enforce a consent decree, or if so, whether she must first meet the criteria of an intended third party beneficiary under contract law, or whether Rule 71 should be read literally as to only require that the Order "grant relief" for a nonparty. *See, e.g.*, *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) (noting a split in authority, but allowing third party enforcement of the decree in part because " [A] court has an affirmative duty to protect the integrity of its decree....'A defendant who has obtained the benefits of a consent decree-not the least of which is the termination of the litigation-cannot then be permitted to ignore such affirmative obligations as were imposed by the decree."); *see also US v. FMC Corp.*, 531 F. 3d 813, 820 (9th Cir. 2008) ("Under Ninth Circuit precedent, incidental third-party beneficiaries may not enforce consent decrees, but *intended* third-party beneficiaries may. Most other circuits are in accord with our restrictive reading of the Supreme Court's statement in *Blue Chip Stamps*...").

139.   The 2005 Stipulated Final Judgment is a valid contract between Defendants ORI, Den Uijl, and Corlett on the one hand, and the FTC on the other hand. Additionally,

51

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

the remaining Defendants have assented to the contract because they had notice of the contract and its provision that any "officers, agents, servants, representatives, and employees, and all other persons or entities in active concert or participation with" Defendants ORI, Den Uijl, and Corlett are bound by the agreement and may be held liable.[7] Valuable consideration was exchanged in that the remaining Defendants received the benefit of profiting from the Products by acting in concert with ORI, Den Uijl, and Corlett in exchange for being bound to the terms of the Stipulated Final Judgment.

140.   Plaintiff and the Class allege that the 2005 Stipulated Finial Judgment was intended to benefit Plaintiff and the Class. The contract expressly provides that Plaintiff and the Class are to receive a benefit in the form of a "consumer redress" fund in the amount $1.5 Million.[8] Moreover, the injunctive relief provisions of the contract are for the direct benefit of consumers who purchased the products and are designed to prohibit Defendants from further exposing Plaintiff and the class members to the false and misleading advertising of weight loss products.

141.   Defendants, as the promisors to the contract, owe a duty of performance to any intended beneficiaries of the promise.

142.   Plaintiff and the Class Members contend that they are intended third party beneficiaries to the promises made by Defendants under the 2005 Stipulated Final Judgment.

143.   There is a substantial and continuing controversy between the Intended Beneficiary Class and Defendants. A declaration of rights is both necessary and appropriate to interpret the ambiguous provisions of the 2005 Stipulated Final Judgment to determine whether Plaintiff and the Class have rights as Intended Beneficiaries under the contract. The Stipulated Final Judgment was entered into between the parties more than ten years ago and the Federal Trade Commission has not taken any further

---

[7] *See* Stipulated Final Judgment, Ex. 1 at ¶ 7.
[8] *See* Stipulated Final Judgment, Ex. 1 at § 5A.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

enforcement action, despite the fact that the advertising and labeling claims of the Products appear to be in clear violation of the Stipulated Final Judgment.

144.    Moreover, the ordinary "bread and butter" type of consumer class action lawsuits have proved mostly ineffective at providing meaningful redress to consumers and, more troubling, have failed to halt the unlawful practices of Defendants in their sales of fraudulent weight-loss supplements. As such, it is necessary for Plaintiff and the Class to explore all available rights and remedies they may have under the law, including their possible legal right to enforce the 2005 Stipulated Final Judgment under principles of contract law or under the remedy afforded under Federal Rule of Civil Procedure 71.

145.    But for the failure to enforce the 2005 Stipulated Final Judgment, Plaintiff and the Class would not have suffered injury because enforcement of the 2005 Stipulated Final Judgment would have prevented Defendants from marketing and selling the Products to Plaintiff and the Class in the first place.

146.    Plaintiff and the Class face a concreate and imminent threat of future injury because Defendants continue to deceptively market and sell the products and Defendants are known to market and sell new weight-loss supplements that are equally misleading, but without disclosing the connection and affiliation to the Products at issue in this Complaint. Plaintiff and the Class Members would purchase the Products, or similar types of products, in the future if, the advertising and labeling claims were truthful and not likely to mislead.

147.    The harm suffered by Plaintiff and the Class Members can be redressed through the requested relief: A Declaratory Judgment of Intended Beneficiary Rights would allow Plaintiff, the Class Members, the Court, and the Public to have a clear and early understanding of what rights and relations exist between the parties. Plaintiff and the Class would find it more favorable to pursue their rights, if any, as Intended Beneficiaries under the 2005 Stipulated Final Judgment. Absent the requested relief, Plaintiff and the Class would face uncertainty as to their rights and may have to forego

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

the possibility of bringing civil contempt, or other meaningful proceedings against Defendants in order to better preserve their rights and remedies in bringing state law consumer fraud claims.

148.    Plaintiff and the Class Members are intended third-party beneficiaries under the terms of the contract and this intent seems to appear on the face of the contract. Specifically, the following provisions, among others, suggest that Plaintiff and the Class Members are intended third party beneficiaries:

      a.  "The action and relief awarded herein ***are in addition to***, ***and not in lieu of***, other remedies that may be provided by law. *See* Ex. 1, ¶ 6. (Emphasis Added)."

      b.  "Proceedings instituted under this paragraph *are in addition to, and not in lieu of, **any other civil** or criminal remedies that may be provided by law, **including** any other proceedings the Commission may initiate to enforce this Order. Id.* at ¶ V.(D) (Emphasis Added)."

      c.  "…Proceedings instituted under this provision would be *in addition to, and not in lieu of*, ***any other civil*** or criminal remedies as may be provided by law, *including but not limited to contempt proceedings*, ***or*** any ***other*** proceedings that the Commission or the United States may initiate to enforce this Order." *Id.*

149.    As a direct and proximate result of Defendants' marketing and sales of the Products, Plaintiff and the Declaratory Judgment Class have suffered injury to their legal rights under the 2005 Stipulated Judgment, including their right not to be injured by and subjected to illegal and false advertising statements.

150.    Plaintiff and the Class request an Order for judgment declaring their rights and relations under the 2005 Stipulated Final Judgment, the Court's Permanent Injunction, and all corresponding injunctive and equitable relief necessary to effectuate

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

the Declaratory Judgment. In addition, Plaintiff and the Class seek an award of attorneys' fees and costs as allowed by law.

## COUNT II

### CLAIM FOR INTENTIONAL MISREPRESENTATION, FRAUD, AND DECEIT

### CAL. CIV. CODE § 1710(2)

### *By the Consumer Fraud Classes*

151.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

152.   Plaintiff brings this Claim individually and on behalf of the members of the Class against all Defendants.

153.   There are no material differences in the laws of the fifty states with respect to claims for fraud and deceit as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state law exists, then Plaintiffs and the Class assert this Claim based on the laws of California and all state with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws

154.   Plaintiff brings this claim under alternate legal theories sounding in both tort and contract as allowable by Federal Rule of Civil Procedure 8(d)(2). Plaintiff also asserts alternate remedies sounding in both law and equity for this Claim.

### **False Statements of Material Facts**

156.   Defendants made material representations to Plaintiff and the Class members that the Lipozene Products are effective at providing weight loss benefits and other representations described in this complaint.   However, the Products are not effective at providing the advertised weight loss results because the ingredients in the Products are ineffective, as established by numerous reliable and credible studies, and the ingredients cannot provide the advertised weight-loss benefits.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

**\*\*Material Statements of Fact and not Opinions\*\***

157.   Defendants claimed to have special knowledge about the weight loss supplements because they tout the clinical studies supporting the Lipozene Products and claim that the Products are made by "Obesity Research Institute," which is a name designed to mislead consumers into believing that the Products are associated with a legitimate facility that conducts scientific research into obesity, such as the similar sounding Obesity Research Center at the National Institute of Health.

158.   Plaintiff and the class members did not have the same superior knowledge about the products.

159.   Defendants made the representations described in this complaint as true representations, not casual expressions of belief, and did so in a way that declared the matter to be true.

160.   Defendants had reasons to expect that by disseminating purported "clinically proven" weight loss products, that Plaintiff and the Class would rely on their representations as material statements of facts and not opinions.

161.   Defendants' actions constitute "actual fraud" within the meaning of Cal. Civ. Code § 1572 because Defendants did the following with the intent to deceive Plaintiffs and Class member and to induce them to enter into their contracts:

a) Suggested that the Products are effective as weight-loss aids, even though Defendants knew that the Products are not;

b) Positively asserted that the Products are made with no artificial ingredients or allergens, when in fact they are not;

c) Suppressed the true nature of the Products from Plaintiffs and Class members; and

d) Promised users would loose weight without diet and exercise.

162.   Defendants' actions, listed above, also constituted "deceit" as defined by Cal. Civ. Code § 1710 because Defendants willfully deceived Plaintiff and the Class

members with intent to induce them to alter their positions to their detriment by purchasing defective Products.

**\*\*Fraud by Concealment and Omission of Material Facts\*\***

163.   As set forth above, Defendants concealed material facts concerning the true nature of their Products, the testimonials about the products,  and the true nature of the clinical studies used in support of the weight-loss claims made on the product packaging and advertising. Defendants had a duty to make these disclosures based on their superior knowledge of the Products and the ingredients in the Products, as well as their affirmative disclosure of some facts and concealment of other material facts, thus making the partial disclosures deceptive.

164.   Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiff and members of the Classes to purchase the Products. Specifically, Defendants actively concealed the truth about the products by not disclosing all facts about the studies supposedly supporting the Products or by making such studies difficult or impossible to discover because many of the studies are only accessible by means of a paid subscription to the "journal" or other publication that prints the full version of the studies.

165.   Plaintiffs and the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed facts.

166.   Plaintiffs and the Class suffered injuries that were proximately caused by Defendants' active concealments and omissions of material facts.

167.   Defendants' fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiff and the class members as they would not have purchased the products at all if all material facts were properly disclosed.

**\*\*Knowledge of Falsities\*\***

168.   Defendants, at all times mentioned herein, had knowledge that that their representations concerning the Products are false and misleading because they were put

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

on notice of the false and misleading nature of such advertising claims when the U.S. Federal Trade Commission launched an enforcement action against them in 2005.

169.   Defendants are sophisticated parties with superior knowledge about science and supplement products knew that the representations were false or recklessly disregarded to truth about the weight loss products they sold and marketed.

**\*\*Intent to Defraud and Intent to Induce Reliance\*\***

170.   Defendants made the misrepresentations alleged herein with the intention of inducing and persuading Plaintiffs and the Class to purchase the Lipozene Products because the Defendants sought to reap enormous profits from the sales of the falsely labeled Products and the fraudulent advertising and promotion of the Products was essential to Defendants' ability to profit from the sales of the Products.

171.   Defendants further withheld and omitted material information about the Products with the intention of inducing and persuading Plaintiffs and the class to purchase the Lipozene Products as a part of their unlawful scheme to make money from the sales of the Products.

**\*\*\*Intent to Defraud a Class of Persons and the Public\*\*\***

172.   "*One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit.*" Cal. Civ. Code § 1711.

173.   Defendants are responsible for their material misrepresentations and omissions described above even if they did not intend any particular Plaintiff or any particular class member to rely on the misrepresentations because Defendants made the representations to groups of persons and the public at large, intending or reasonably expecting that it would be repeated to Plaintiffs and the Class members who are consumers that were actually mislead into purchasing the products.

** Justifiable Reliance**

174.   Plaintiffs and the Class, by purchasing the products, justifiably relied on Defendants' false and misleading statements and misrepresentations, and on the absence of the material information that Defendants omitted. If Plaintiffs and the class would have known the truth concerning the false representations and omissions, they would not have purchased the Lipozene products at all because the Products are essentially ''worthless'' in that they have a fair market value of $0.00.

175.   Plaintiffs and the Class also justifiably relied on the the material misrepresentations made by all Defendants as described in this complaint because Defendants touted "clinical studies" to further the notion that the products worked as advertised.

**Injury and Actual Damages**

176.   As a direct and proximate result of Defendants' intentional misrepresentations and deceptive omissions, Plaintiffs and the members of the Class were induced to pay for worthless products.

177.   As a direct and proximate result of Defendants' intentional misrepresentations and deceptive omissions, Plaintiff and the members of the Class detrimentally relied on Defendants' misrepresentations and deceptive omissions in that they consumed worthless products that have no positive health benefits and in the fact that the products are potentially dangerous to their health.

178.   Plaintiff and the Class bring this claim for intentional misrepresentation based on alternate legal theories sounding in both tort and contract.

179.   Plaintiff and the Class were damaged through their purchase and use of the Products. Plaintiff and the Class suffered harm in that they suffered actual damages in the amount of what they paid for the Products subtracted by the fair market value of the products are actually worth.

180.   The Products are worthless in that they have a fair market value of zero. Therefore, Plaintiffs and the Class have suffered actual damages in the amount of the purchase price paid for the products.

181.   Alternatively, Plaintiff and the class allege that the Lipozene Products are priced at a premium in comparison to other weight-loss products and that the premium price is commanded in the marketplace as a direct result of the false and misleading advertising tactics described in this complaint. This alternative premium-price measure of damages can be calculated on a uniform class-wide basis and Plaintiffs and the classes out-of-pocket loss is the amount of the premium price that the Products command.

**\*\*Fraudulent Inducement \*\***

182.   For Plaintiff's alternate intentional misrepresentation claim sounding in contract, Plaintiff suffered harm in that she would have actual economic damages for Defendants' breach of contract by way of fraud and Plaintiff alleges that the proper measure of damages would be a full refund of the class members' purchase price of the products because the sales contracts are voidable as a result of fraudulent inducement.

183.   Plaintiff and the Class were induced by fraud when entering into the contracts and would not have purchased the products had they known the truth. Therefore, Plaintiff and the Class repudiate their purchase contracts and pray for legal or equitable restitution to the extent that Defendants have been unjustly enriched by wrongfully obtaining Plaintiffs and the class members' purchase money.

184.   For Plaintiffs' alternative intentional misrepresentation claim based in tort, Plaintiffs and the class suffered harm and seek the actual damages suffered because they detrimentally relied on Defendants' false statements of material facts by expending their time purchasing the products and they suffered a personal injury in that they consumed Products that are worthless and potentially dangerous in that they are "adulterated" and contain undisclosed allergens. This chain of events is collateral to Plaintiffs purchase of the Products and gives rise to a separate tort claim as it affects a separate primary right.

Plaintiffs and the class have all suffered the threshold amount of harm to state a claim for fraud, but in the event that the actual damages based on this tort theory cannot be determined on a class-wide basis, Plaintiffs and the Class will then seek nominal damages for their alternative intentional misrepresentation claim based on tort in the amount of $1.00 for each purchase of the Lipozene Products.

## **Punitive Damages**

185.  Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class members' rights and interests. Defendants' conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## COUNT III

## CLAIM FOR NEGLIGENT MISREPRESENTATION

### CAL. CIV. CODE § 1710(2)

### *By the Consumer Fraud Classes*

186.  Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

187.  Plaintiff and the Class bring this Count in the alternative to Count II.

188.  Defendants had a duty to disclose to Plaintiffs and Class Members correct information as to the quality and characteristics of the Products because Defendants were in a superior position than Plaintiffs and Class Members such that reliance by Plaintiffs and Class Members were justified., Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

189.  During the applicable Class period, Defendants negligently or carelessly misrepresented, omitted, and concealed from consumer's material facts regarding the quality and characteristics of the Products, including the alleged weight-loss benefits.

61

190.   Defendants made such false and misleading statements and omissions through a wide range of advertisement medium described herein, with the intent to induce Plaintiffs and Class Members to purchase the Products.

191.   Defendants were careless in ascertaining the truth of its representations in that they knew or should have known that Plaintiffs and Class Members would not realize the alleged benefits represented by Defendants.

192.   Plaintiffs and Class Members were unaware of the falsity in Defendants' misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

193.   Plaintiffs and Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

## COUNT IV

## CLAIM FOR QUASI-CONTRACT/ UNJUST ENRICHMENT

### THE COMMON LAW OF CALIFORNIA

### *By the Consumer Fraud Classes*

194.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

195.   Plaintiff and the Class members conferred a benefit on Defendants by purchasing the Products.

196.   Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented the facts concerning the efficacy of the Products and caused Plaintiffs and the Class to lose money as a result thereof.

197.   Plaintiff and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products if the true facts had been known. Because Defendants' retention of the non-gratuitous benefit

62

conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT V

### CLAIM FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW

CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

*By the Consumer Fraud Classes*

198.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

199.   California's Unfair Competition Law, Business and Professions Code §17200 (the "CULL") prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising, and continue to engage in such business conduct, in violation of the UCL.

200.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

### **Unlawful**

201.   Defendants have violated the UCL unlawful prong in at least the following ways:

   i.   By knowingly and intentionally concealing from Plaintiff and the other Class members that the Products cannot provide the advertised weight-loss benefits while obtaining money from Plaintiffs;

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

ii.  By misrepresenting the nature of the Products and the Products' effectiveness at providing the weight-loss benefits;

iii.  By engaging in the conduct giving rise to the claims asserted in this complaint;

iv.  By violating the federal Food Drug and Cosmetics Act and California's Counter-part, the Sherman Act, in that Defendants sold products that are "misbranded" and "adulterated."

v.  By violating the Court's 2005 Order for a Permanent Injunction and by civil contempt of court;

vi.  By abuse of legal process and contempt of court in that Defendants have mislead the courts, the Class Members, and the Public by engaging in collusive and egregious "class action settlement" practices, including by hiring a "class action administrator" who markets, sells, distributes and profits from sales of the Lipozene Products that were at issue in the case;

vii.  Breach of fiduciary duties and providing material assistance in breaching fiduciary duties in that class action administrators are to serve in the role of a trustee and fiduciary on behalf of the class;

202.  Such conduct is ongoing and continues to this date.

203.  Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

**Unfair**

204.  The UCL also prohibits any "unfair"… business act or practice."

64

205. Defendants' acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  In the alternative, Defendants' business conduct as described herein violates relevant laws designed to protect consumers and business from unfair competition in the marketplace.  Such conduct is ongoing and continues to date.

206. Plaintiff also alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers. Plaintiffs assert violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

207. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

## **Fraudulent**

208. The UCL also prohibits any "fraudulent business act or practice."

209. Defendants' claims, nondisclosures (i.e., omissions) and misleading statements, as more fully set forth above and specifically in Count II, were false, misleading and/or likely to deceive a reasonable consumer within the meaning of the UCL.  Such conduct is ongoing and continues to this date.

210. Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class members.  Plaintiff has suffered injury in fact as a result of Defendants' unfair conduct.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE
RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

211.   Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff and the Class to injunctive relief against Defendants, as set forth in the Prayer for Relief.

212.   Pursuant to Business and Professions Code §17203, Plaintiffs and the Class seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to engage in a corrective advertising campaign.

213.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Products they purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

## COUNT VI

### CLAIM FOR VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA") CAL. CIV. CODE §§ 1750, *et seq*.

### *By the Consumer Fraud Class*

214.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

215.   Defendants are "persons" under Cal. Civ. Code § 1761(c).

216.   Plaintiff is a "consumer," as defined by Cal. Civ. Code § 1761(d).

217.   By making affirmative misrepresentations about the weight loss benefits of the products and by concealing material facts about the products and the studies supporting the efficacy claims about the products, Defendants engaged in deceptive business practices prohibited by the CLRA, Cal. Civ. Code § 1750, *et seq*., including:

- § 1770(a)(2): Misrepresenting the source, sponsorship, approval, or certification of goods or services by claiming that that the Products are "clinically proven" to help users loose weight when in fact they are not.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

- § 1770(a)(3): Misrepresenting the affiliation, connection, or association with, or certification by, another by using fake testimonials and endorsements.
- 1770(a)(5): Representing that goods have characteristics, uses, or benefits which they do not have by claiming that the products are effective as weight-loss aids when in fact they provide no such benefits.
- § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another by claiming that the products are natural and contain no allergens when in fact such representations are not true.
- § 1770(a)(9): advertising goods with intent not to sell them as advertised because Defendants knew that the Products could not provide the advertised benefits, but they chose to advertise and sell the Products to consumers.
- § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not by using harmful ingredients that fluctuate in their quantity and quality.

218.   Defendants had a duty to make material disclosures about the true nature of the Products.

219.   A reasonable consumer would not have purchased nor paid as much for the Products had Defendants disclosed the truth about the weight loss benefits of the products and the clinical studies supporting the products, as that information is material to a reasonable consumer.

220.   As a result of its violations of the CLRA detailed above, Defendants have caused and continues to cause harm to Plaintiff and members of the Class and, if not stopped, will continue to harm them. Had Plaintiff known the truth about the Products she would not have purchased the Products.

221.   In accordance with Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Defendants' violations of the CLRA. In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) &

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

(d), Plaintiff will subsequently amend this Complaint to also include a request for damages. Plaintiff and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

## COUNT VII

### CLAIM FOR FALSE ADVERTISING

**CAL. BUS. & PROF. CODE §§ 17500, *et seq*.**

***By the Consumer Fraud Classes***

222.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

223.   Plaintiff and the Class members have standing to pursue this claim as Plaintiff and Class have suffered injury in fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Product in reliance upon Defendants' marketing claims.  Plaintiff used the Products as directed, but the Products have not worked as advertised, nor provided any of the promised benefits.

224.   Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code section 17500, *et seq*. because Defendants advertised the Products Plaintiff purchased in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendants to be untrue or misleading.

225.   Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

226.   Pursuant to section 17535 of the California Business and Professions Code, Plaintiffs and the Class seek an order of this court enjoining Defendants from continuing

to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

227.   Plaintiffs also seeks an order for the disgorgement and restitution of all monies from the sale of the Products which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

<u>**COUNT VIII**</u>
**CLAIM FOR BREACH OF EXPRESS WARRANTY**

**CAL. COMM. CODE § 2313**

***By the Consumer Fraud Class***

228.   Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

229.   The Express Warranties as defined in this complaint are written warranties that appear on the product labels and packaging.

230.   Defendants, in their capacity as manufacturers of the Products, expressly warranted that the Products were fit for their intended purpose by making the Express Warranties.

231.   The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiff and the Class because they concerned alleged efficacy of the Products regarding the ability aid with weight loss.

232.   These representations had an influence on consumers' decisions in purchasing the Products.

233.   Defendants made the above representations to induce Plaintiff and the members of Class to purchase the Products. Plaintiff and the Class members relied on the representations when purchasing Defendants' products.

234.   In fact, the Products do not conform to the Express Warranties because each of the Express Warranties are false and misleading and the Products do not perform as warranted.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF, MONETARY DAMAGES, AND CONSUMER REDRESS

235.   Plaintiff and the Class members were injured and continued to be injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products or paid as much for the Products if the true facts had been known.[9]

236.   Plaintiff and the Class bring this claim against Defendants in their capacities as manufacturers of the Products with whom Plaintiffs have not dealt with directly. Therefore, Plaintiff and the Class were not required to notify Defendants of their breaches of express warranties within a reasonable time. Plaintiffs have notified Defendants of their breaches via letters sent by certified mail, return receipt requested, and are allowing Defendants reasonable time to take corrective actions. Should Defendants fail to take corrective action, Plaintiff and the Class reserve their right to amend this complaint and bring claims for breach of warranty based on Defendants' capacities as sellers of the Products and to assert other warranty claims based on similar state laws like the California Song-Beverley Consumer Warranty Act and the Federal Magnuson-Moss Warranty Act.

## COUNT IX
## CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### CAL. COMM. CODE § 2313
### *By the Consumer Fraud Class*

237.   Plaintiff and the Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

238.   Defendants, in their capacity as manufacturers of the Products, impliedly warranted that the Products were fit for their intended purpose in that the Products would aid with weight-loss.

239.   Defendants did so with the intent to induce Plaintiff and Class Members to purchase the Products.

---

[9] Though, Plaintiff and the Class would still be interested in purchasing the Lipozene Products again if they were represented properly or truthfully.

240. At the time of Plaintiff and the class members' purchase, Defendants, by their occupations as manufacturers of the goods, held themselves out as having special knowledge or skill regarding the Products.

241. Defendants breached the warranties implied in the contract for the sale of the Products in that the Products:

a) Were not of the quality as of other products generally acceptable in the trade of weight-loss aids and/or supplement products;

b) Were not fit for the ordinary purposes for which the Products were intended because they provide no weight-loss benefits.

c) Were not adequately labeled because the statements on the label are false and misleading;

d) Were not conformed to the promises or affirmations of fact made on the container or label because the Products provide no weight-loss benefits and are worthless products;

242. Moreover, the Products could not pass without objection in the trade under the contract description, the goods were not of fair or average quality within the description, and the goods were unfit for their intended and ordinary purpose. As a result, Plaintiffs and the Class members did not receive the Products as impliedly warranted by Defendants to be merchantable.

243. Plaintiffs and the Class bring this claim against Defendants in their capacities as manufacturers of the Products with whom Plaintiffs have not dealt with directly. Therefore, Plaintiffs and the Class were not required to notify Defendants of their breaches of implied warranties within a reasonable time. Plaintiffs have notified Defendants of their breaches via letters sent by certified mail, return receipt requested, and are allowing Defendants reasonable time to take corrective actions. Should Defendants fail to take corrective action, Plaintiffs reserve their right to amend this complaint and bring claims for breach of implied warranties based on Defendants'

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

capacities as sellers of the Products and to assert other warranty claims based on similar state laws like the California Song-Beverley Consumer Warranty Act and the Federal Magnuson-Moss Warranty Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class Members request that the Court enter an order or judgment against Defendants including the following:

A.    An order certifying that the Intended Beneficiary Class is proper as a class action pursuant to Rule 23(b)(2) with respect to adjudication of Plaintiff's claim for Declaratory Judgment;

B.    In addition to or in the alternative to the Rule 23(b)(2) class, an order certifying that the Consumer Fraud Classes are proper as class actions pursuant to Rule 23(b)(3), or Rule 23(b)(2), with respect to adjudication of Plaintiff's remaining claims;

C.    An order bifurcating class certification by allowing Plaintiff to file a motion for class certification as to the Intended Beneficiary Class before filing a motion for certification of the consumer fraud classes;

D.    An order appointing Plaintiff as a class representative of the Classes, as class representative of her respective Subclasses, and The Law Office of Ronald A. Marron as counsel for the Class;

E.    An order requiring Defendants to bear the costs of Class notice;

F.    An Order for a Judgment declaring that Plaintiff and the Intended Beneficiary Class Members are third party intended beneficiaries to the 2005 Stipulated Final Judgment that Plaintiff and the Class Members have standing to initiate civil contempt proceedings against Defendants in accordance with Federal Rule of Civil Procedure 71;

G.    An Order holding Defendants in civil contempt for violations of the 2005 Order for Permanent Injunction and Stipulated Final Judgment;

72

H.  An Order for a preliminary and permanent injunction to enforce compliance with the provisions of the 2005 Stipulated Final Judgment, and attorneys' fees, costs of suit, and incentive award for Plaintiff's representation of the Class pursuant to applicable state or federal  law.

I.  Restitution in such amount that Plaintiff and Class Members paid to purchase Defendants' Products;

J.  Actual damages, compensatory damages, punitive, treble damages, nominal damages, and such other relief as provided by the statutes cited herein;

K.  Other appropriate injunctive relief;

L.  An order declaring Defendants' conduct as unlawful, and an order enjoining Defendants from unlawfully and misleadingly representing the Products in violation of state law;

M.  An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest on such monetary relief;

N.  An order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendants received as a result of the misleading, fraudulent, and unlawful conduct alleged herein.

O.  Such other relief to which Plaintiffs and Class Members may be entitled to at law or in equity.

## **Jury Trial Demanded**

Plaintiff hereby demands a jury trial on all claims so triable.

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS

Dated: March 29, 2015        **LAW OFFICES OF RONALD A. MARRON**

Respectively submitted,

s/ Ronald A. Marron
Ronald A. Marron, Esq.

RONALD A. MARRON
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92101
Telephone: (619) 696-9006
Fax: (619) 564-6665

***Counsel for Plaintiff and the Proposed Classes***

CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE AND INJUNCTIVE RELIEF,  MONETARY DAMAGES, AND CONSUMER REDRESS