**LAW OFFICES OF**
**RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
ron@consumersadvocates.com
MICHAEL T. HOUCHIN (SBN 305541)
mike@consumersadvocates.com
MARK L. KNUTSON (SBN 131770)
mark@consumersadvocates.com
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA BOZIC on behalf of herself, all others similarly situated, and the general public,<br><br>          Plaintiff,<br>v.<br><br>HENNY DEN UIJL; an individual, SANDRA DEN UIJL; an individual, BRYAN CORLETT; an individual, OBESITY RESEARCH INSTITUTE, a California Limited Liability Company, CONTINUITY PRODUCTS, a Delaware Limited Liability Company; NATIONAL WEIGHT LOSS INSTITUTE, a California Limited Liability Company; ZODIAC FOUNDATION. a California Limited Liability Company; CONVERSION SYSTEMS, a California Limited Liability Company; INNOTRAC CORPORATION, a Georgia Corporation,<br><br>          Defendants | Case No.: 3:16-cv-00733-BAS-MDD<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND FOR AN ORDER TO SHOW CAUSE**<br><br>Judge:  Hon. Cynthia A. Bashant<br>Ctrm:   4B<br>Date:   June 27, 2016<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |

## I. INTRODUCTION

Plaintiff Regina Bozic ("Plaintiff") hereby files the following Reply Memorandum of Law in response to Defendants Henny den Uijl ("den Uijl") and Obesity Research Institute ("ORI") (collectively the "Enjoined Defendants" or "Defendants") Opposition to Plaintiff's Motion for Preliminary Injunction and for an Order to Show Cause as to why Defendants Should not be Adjudged in Civil Contempt. (Dkt. No. 26).

Defendants go to great lengths arguing that Plaintiff lacks standing to enforce the 2005 Stipulated Final Judgment and Order for a Permanent Injunction.[1] But there is no question that Defendants have violated this Court's Permanent Injunction through their marketing of Lipozene:

| Prohibited Conduct | Lipozene Advertisement |
|---|---|
| "Causes Rapid and Substantial weight loss without the need to reduce caloric intake or increase physical activity." (Order at 4) | *"If you want to lose 4X more weight doing exactly what you're doing, whether your [sic] dieting, not dieting, working out, or not working out…don't change what you're doing! Just add Lipozene! America's #1 diet supplement. Lipozene can help you lose 400% more weight or your money back!"* <br><br> *See* "*Just Add Lipozene*," [*archived by* truthinadvertising.org, https://www.truthinadvertising.org/wp-content/uploads/2016/04/JustAddLipozene.mp4. |
| "Works for all Users." (Order at 4) | *"You can join the countless people who have lost weight with Lipozene."* <br><br> *See* "*Water v. Fat*," [*archived by* truthinadvertising.org, https://www.truthinadvertising.org/wp-content/uploads/2016/04/WatervFat.mp4. |

---

[1] *See Fed. Trade Comm'n v. FiberThin, LLC, et al.*, No. 05-cv-01217 (S.D. Cal. 2005).

1

*Bozic v. Den Uijl, et al.*, No. 3:16-cv-00733-BAS-MDD
PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION

As set forth in Plaintiff Bozic's Opening Brief (ECF No. 17-1), parties should not be able to re-adjudicate the legitimacy and conclusiveness of previously stipulated court orders and then commit acts of disobedience designed to avoid them. *Id*. at 2-3 (citing *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418, 450 (1911) ("If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.'"). This is exactly what the Enjoined Defendants are seeking to do here, *i.e.*, to escape their previously admitted accountability to consumers. But it is well-established that this Court has the inherent power to enforce its own orders despite whether or not Plaintiff has standing as a third party beneficiary.[2]

Plaintiff should not even be required to meet the standard for obtaining a preliminary injunction because Defendants ***are already enjoined*** from engaging in the complained of conduct. Nonetheless, Plaintiff is likely to succeed on the merits of her claims and can satisfy her burden of proving that a preliminary injunction is appropriate.

<u>First</u>, Plaintiff has standing to seek a declaratory judgment and corresponding civil contempt remedies because Plaintiff and the class members are parties for whom "relief was granted" under Federal Rule of Civil Procedure 71. Moreover, by seeking injunctive relief and consumer redress in the 2005 enforcement action, the United States Federal Trade Commission invoked this Court's inherent equitable powers. This Court may grant any ancillary relief necessary to provide for complete justice. Plaintiff's action for a declaratory judgment may complement the Court's ability to provide ancillary relief

---

[2] *See, e.g., S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 441 (2d Cir. 1987) (upholding a *sua sponte* civil contempt order for restitution and noting that "Although this was not a class action, we believe the district court's obligation to protect the note holders by compelling restitution was analogous to the obligations it has in reviewing settlements of a class action and distributions to the class. In the latter circumstances, the court's obligations to protect the class are quite independent of the initiative or wishes of class representatives, named plaintiffs, or class members who appear at the relevant hearing.").

2

because the Declaratory Judgment Act specifically allows the Court to provide "further necessary or proper relief" if a decree is granted. *See* 28 U.S.C. § 2202.

Second, Defendants' violations of the 2005 Court Order are independently actionable under California's Unfair Competition Law. *See Cel-Tech Communications v. Los Angeles Cellular,* 20 Cal.4th 163, 180 (1999) (noting that the scope of the UCL is "broad...to include 'any unlawful, unfair or fraudulent business act or practice,'" its "coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law,'" and "it governs 'anti-competitive business practices' as well as injuries to consumers....") (internal quotations and citations omitted); *accord Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 535 (1997).

Third, and notwithstanding the 2005 Court Order, Plaintiff is likely to succeed on the merits of her false advertising claims brought under California's consumer protection laws. There is a very high likelihood of success on the merits in this case because Plaintiff has evidence showing that 1.) Defendants have misrepresented the true nature of several "clinical studies" that supposedly support their claims, 2.) The overwhelming majority of the scientific community agrees that Glucomannan is ineffective as a weight-loss aid; 3.) Defendants have concealed the potential risks of Glucomannan from consumers, and, 4.) Lipozene is an adulterated product that contains potentially dangerous substances.

## II. PLAINTIFF IS LIKELY TO SUCCEED IN PROVING THAT LIPOZENE IS A "WORTHLESS" PRODUCT

Defendants argue that Plaintiff is asserting a "lack of substantiation" theory of liability and that there is "no private remedy for unsubstantiated advertising." Def.'s Opp. at 16, ECF No. 26. But lack of substantiation is not the crux of Plaintiff's claim. In fact, Plaintiff has presented her own reliable and credible evidence proving that Lipozene is ineffective as a weight-loss aid. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,

3

*Bozic v. Den Uijl, et al.*, No. 3:16-cv-00733-BAS-MDD
PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION

107 Cal.App.4th 1336, 1348 (2003) ("The falsity of the advertising claims may be established by testing, scientific literature, or anecdotal evidence.").[3]

### A.  Plaintiff Meets Her Burden of Proof through "Strong Evidence"

Plaintiff's evidence includes a statement by the United States Institutes of Health's Office of Dietary Supplements ("ODS"), which has concluded that glucomannan— the active ingredient in Lipozene— "has little to no effect on weight loss." *See* Marron Decl. ¶ 45 & Ex. 44 at 444, ECF No. 17-47.  The ODS also warns that consumption of glucomannan tablets "can block the esophagus, which is a serious problem." *Id*.

Plaintiff is also offering a "meta-analysis" that concludes "The evidence from available [Randomized Clinical Trials] does not show that glucomannan intake generates statistically significant weight loss."[4] This meta-analysis evidence greatly outweighs the "studies" that Defendants present in support of Lipozene because "Meta-analyses pool the results of clinical trials 'to arrive at a single figure to represent the totality of the studies reviewed.'" *Mullins v. Premier Nutrition Corporation*, --- F.Supp.3d ----, 2016 WL 1534784, at *8 (N.D. Cal. 2016) (quoting Federal Judicial Center, *Reference Manual on Scientific Evidence* 607 (3d ed. 2011)). Indeed, "Among the types of medical evidence, meta-analysis is considered the strongest." *Id*.  The *Onakpoya* meta-analysis is the "strongest" evidence showing that Lipozene is ineffective and unsafe. In fact, *Onakpoya*

---

[3] Although Plaintiff is not advancing this argument, some courts have correctly held that a "Plaintiff may allege that no credible scientific evidence supports [Defendant's] representations when Defendant puts the clinical proof for its product at issue. Since Defendant's advertising expressly states that it has clinical proof to support [its product's] effectiveness, Plaintiff plausibly alleges falsity when he contends that there is an absence of such proof." *McCrary v. Elations Co.*, No. 13–cv–00242–JGB, 2013 WL 6403073, at *9 (C.D.Cal. July 12, 2013).

[4]  I. Onakpoya *et al.*, *The Efficacy of Glucomannan Supplementation in Overweight and Obesity: A Systematic Review and Meta-Analysis of Randomized Clinical Trial,* 33 J. Am. Coll. Nutr. 70–78 (2014), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/24533610;  Marron Decl., ¶ 34 & Ex. 33, ECF No. 17-36.

4

*Bozic v. Den Uijl, et al.*, No. 3:16-cv-00733-BAS-MDD
PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION

states that glucomannan intake causes adverse events that were "mostly related to the gastrointestinal system and included diarrhea, constipation, abdominal discomfort, and mild meteorism." *Onakpoya* at 75, ECF No. X. As *Onakpoya* concludes, "there is no good reason to recommend glucomannan for body weight reduction." *Id*. at 77.

1. <u>The 2005 Keithley "Study" Has Been Discredited by the 2013 Keithley Clinical Trial</u>

Defendants claim that the 2005 *Keithley* study "ultimately confirms" that glucomannan "resulted in significant weight loss in overweight and obese individuals." Def.'s Opp. at 4. But the *Keithley* "study" is another meta-analysis that was conducted years before the *Onakpoya* meta-analysis. Moreover, the *Keithley* meta-analysis clearly concludes that "limited data suggest[s] that [Glucomannan] is safe and effective in promoting modest weight loss" and that "Before [Glucomannan] can be safely recommended for widespread use, however, additional trials of standardized preparations are needed to extend extant data on its safety, efficacy, and weight- reducing mechanisms of action." Marron Decl., ¶ 32 & Ex. 31 at 372, ECF No. 17-34.

But Dr. Keithley *did perform an additional clinical trial* on Glucomannan in 2013 that was published in the prestigious *Journal of Obesity*.[5]  That study concluded that "glucomannan supplements (3.99 g daily) were well tolerated but did *not* promote weight loss in overweight and moderately obese individuals consuming self-selected diets and maintaining usual physical activity patterns." Marron Decl., ¶ 35 & Ex. 34 at 389, ECF No. 17-37.

---

[5] *See* Keithley, *et al.*, *Clinical Study: Safety and Efficacy of Glucomannan for Weight Loss in Overweight and Moderately Obese Adults*, J. OBESITY (2013), *full text available at* http://www.hindawi.com/journals/jobe/2013/610908/ & Marron Decl., ¶ 35 & Ex. 34.

**2.** <u>The "Mysterious Lipozene Study" Is Really an Unpublished and Undated "Technical Manual" and Even the Author Thinks It's "Not Worth the Paper It's Written On"</u>

A 2009 article in the *Los Angeles Times* about Lipozene reported that "A search of medical database found no studies of Lipozene. There were also no glucomannan studies that matched the findings touted in the Lipozene television ad… the mysterious Lipozene study aside, there is not much ongoing interest in glucomannan research." *See* Marron Decl., Ex. 36 at 393, ECF No. 17-39. But the reason why the "Mysterious Lipozene Study" could not be found is that Henny den Uijl himself has stated that "since the Kaats study's completion, ORI has protected its proprietary interest in the study by seeking to maintain its secrecy and prevent its disclosure to the general public." *See* Decl. of Henny den Uijl, ¶ 5 in *Fiber Research International,* 3:15-cv-00595-BAS-MDD, ECF No. 156-4 (S.D. Cal. Mar. 15, 2016). Absent from Mr. den Uijl's declaration, however, is that ORI launched a lawsuit seemingly to harass the plaintiffs in another consumer class action lawsuit after they criticized and attacked the study in their class action complaint.[6] The lawsuit actually alleges that "The Study constitutes a trade secret of ORI that was never intended by ORI or any of its affiliates to be disclosed to the public."[7]

It was eventually this Court that made the study a matter of public record when it denied ORI's motion to seal a previously filed unsealed document. But perhaps the most bizarre thing about the "Mysterious Lipozene Study" is the deposition testimony from the author of the study himself– Dr. Gilbert Kaats. When discussing the "technical report" that Defendants have used in support of their claims, Kaats stated:

> Someone gives me a technical report, I'm going to say, that's good, I understand that technical report. I want to see the published article. I want to see independent reviewers review that study over there and look at the

---

[6] *See Fernandez v. Obesity Research Institute, LLC,* 2:13-cv-00975-MCE-KJN, ECF Nos. 37-4, 37-5 & 37-6 (E.D. Cal. Jul. 25, 2013) (attaching the complaint and discovery requests in the matter of *Obesity Research Institute, LLC v. DOES 1 through 100, inclusive*). It was eventually this Court that made the "study" a matter of public record on

[7] See *Fernandez*, ECF No. 37-4 ¶ 9.

6
*Bozic v. Den Uijl, et al.*, No. 3:16-cv-00733-BAS-MDD
PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION

methodology and the conclusions and so forth. And, see, that's what I want to see. That's a valid study. Not this thing over here. So ORI is sitting with something that in my mind, and in most researchers' mind, and most scientists said, *this is not worth the paper it's written on*.[8]

### 3. The Charbonnet Graduate Thesis "Goes Well with Fish"

The Charbonnet graduate thesis may be best described as "satire." When offering the "study" into evidence at a deposition, Defendants' counsel said, "So Walsh is 27, Keithley is 28, Sood is 29, and Charbonnet, **which goes well with fish**, is 30." *See* den Uijl Dep. Tr. 216:1-4, Marron Decl., Ex. 24; ECF No. 17-27. A review of the numbers in the Charbonnet study shows that something does not quite add up.

### 4. Walsh and Sood Are Unreliable and the Result of Industry Bias

Defendants further rely on a study by Dr. Walsh. But the *Onakpoya* meta-analysis notes that the 1984 *Walsh* study was "exclusively industry funded." *Onakpoya* at 76 & n. 29. The *Onakpoya* meta-analysis also notes that the *Sood* publication did not conclude that Glucomannan is effective as a weight-loss aid, but rather that Glucomannan may have an effect on "body composition." *Onakpoya* at 70 & n. 10. Moreover, the *Walsh* study was conducted in 1984 well *before* the 2005 FTC enforcement action. The FTC alleged at that time that Defendants' Glucomannan based supplement, Fiberthin, was ineffective at producing weight-loss benefits so it is unclear how the *Walsh* study somehow now supports the efficacy of glucomannan.

### B. Defendants Have Put the Clinical Proof of Lipozene at Issue

Plaintiff may also prevail by showing that Lipozene is not, in fact, clinically proven. *See McCrary v. Elations Co., LLC*, No. EDCV 13-0242 JGB OPX, 2013 WL 6403073, at

---

[8] Kaats Dep. Tr. 114:1-12, *Fiber Research International*, ECF No. 182-7 (emphasis added); *Compare* 2005 Court Order ¶ 2, Marron Decl., Ex. 5 at 141 ("Competent Reliable Scientific Evidence' shall mean tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted in an objective manner by those qualified to do so, using procedures generally accepted in the field to yield accurate and reliable results").

7

*Bozic v. Den Uijl, et al.*, No. 3:16-cv-00733-BAS-MDD
PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION

*9 (C.D. Cal. July 12, 2013) ("However, Plaintiff may allege that no credible scientific evidence supports Elations' representations when Defendant puts the clinical proof for its product at issue") (citing *Hughes v. Ester C Co.,* 12–CV–0041 JFB ETB, 2013 WL 1080533, at *4 (E.D.N.Y. Mar.15, 2013)).

### III. IRREPARABLE HARM MAY RESULT IF AN INJUNCTION DOES NOT ISSUE

Frist, Plaintiff should not be required to satisfy the irreparable harm requirement because Defendants are already enjoined from making many of the advertising claims at issue. Second, Plaintiff can prove irreparable injury because Lipozene is a dangerous product. Defendants fail to disclose material risks associated with using Lipozene like choking and gastrointestinal issues. *See* Marron Decl., Ex. 32 at 381 & Ex. 44. Third, irreparable injury is present in this case because Defendants use various shell entities to conceal assets in an attempt to shield themselves from liability. Plaintiff and the class members will suffer an irreparable injury if no precautions are taken to prevent Defendants from unjustly concealing their ill-gotten gains from the sales of Lipozene.

Defendant den Uijl argues that his various business entities are not the alter egos of each other. But that is not what his longtime in-house counsel says. In a complaint filed in the Superior Court for the County of San Diego, ORI's former attorney, Joshua Weiss, filed a complaint against many of the Defendants named in this action alleging that they are "alter ego" entities of one another and that Defendant Zodiac Foundation serves as an "investment vehicle" for Defendant den Uijl. *See* ECF No. 1-5. Mr. Weiss has personal knowledge of these matters because he had worked for Defendants since around 2005. *See* Marron Decl., Ex. No. 6 (showing that Mr. Weiss is listed as the attorney of record on the Lipozene trademark); Ex. No. 7 (LinkedIn profile showing that Mr. Weiss' for responsibilities at continuity products); Ex. No. 24 at 298 (showing that Mr. Weiss had access to Defendants' "substantiation" file). Put simply, Mr. Weiss could not make such allegations about an alter ego relationship existing without knowingly filing a false pleading before the court.

## IV. DEFENDANTS' FLAWED RES JUDICATA ANALYSIS HAS NO BEARING ON THE MERITS OF PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

Defendants argue that the Lipozene-related settlement/judgments in *Smart* and *Corby* and the settlement and pending judgment *Duran* (post-class action settlement) are *res judicata* as to claims raised by Plaintiff Bozic both individually and on behalf of the putative class in this action.[9] After having caught the red-handed defrauding consumers nationwide with the false and misleading marketing representations and material omissions relating to the Enjoined Defendants opted to settle these California class action lawsuits. However, none of the class periods in these cases overlap with each of the proposed classes plead in Bozic v. den Uijl.[10] *See* Def.'s RJN, Ex. 7 [*Duran* Final Approved Order, ¶ 3, class period August 10, 2012 through August 18, 2014; (ECF No. 26-19). Indeed, Plaintiff Bozic alleges that she purchased the product in the Spring of 2015. *See* Compl.,¶ 21. Thus, Plaintiff is not a member of the other classes and is not bound by any of the settlement agreements.

## V. *MAZZA* HAS NO BEARING ON PLAINTIFF'S REQUESTED INJUNCTION

Defendants argue that Plaintiff cannot certify a nationwide class. But Plaintiff is bringing a claim under the Federal Declaratory Judgment Act, which undoubtedly applies

---

[9] See *Smart v. Obesity Research Institute, Inc., LLC*, Case No. BC407882 (Los Angeles Sup. Ct. 2009) ("*Smart*"); *Corby v. Obesity Research Institute, LLC*, Case No. 37-20011-9927 (San Diego Sup. Ct. 2011) ("*Corby*"); and *Duran v. Obesity Research Institute, LLC*, Case No. 37-2013-48664 (San Diego Sup. Ct. 2013) ("*Duran*"). Copies of these complaints and/or accompanying class action settlements/judgments are attached as Exhibits 1-12 to the Enjoined Defendants' Request for Judicial Notice in Support of Defendants' Motion to Dismiss Claims ("Deft's RJN") [Dkt. # 21-2]. The Court should note that Defendant Uijl was not a party to the *Smart*, *Corby* or *Duran* actions. *Id*.

[10] Notably absent from the Enjoined Defendants' argument is the fact that *Duran* is currently on appeal, as thus has no res judicata effect because under California law, the pendency of a state court appeal precludes finality. *See Sosa v. DirecTV*, 437 F.3d 923, 928 (9th Cir.2006).

9

*Bozic v. Den Uijl, et al.*, No. 3:16-cv-00733-BAS-MDD
PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION

throughout all fifty states. Moreover, even though a *Mazza* analysis is more well-suited for class certification briefing, Plaintiff offers as evidence the fact that Defendants once filed a motion to transfer venue to the Southern District of California and argued "that ORI's principal place of business is in San Diego County, California—all of the following are located there: ORI's headquarters which serves as the center for its direction, control, and coordination of all business operations (including marketing and advertising functions); administrative functions; executive functions; business records; the workplace of all its personnel; production activities; ORI's earnings from product sales; product purchases and sales (although retailers also carry ORI's products)." *Fernandez et al v. Obesity Research Institute, LLC et al*, Case No. 2:13-cv-00975, ECF No. 20 (E.D. Cal. May 16, 2013). Thus, Plaintiff has satisfied her initial burden. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)

### VI.    DEFENDANTS' EVIDENTIARY OBJECTIONS LACK MERIT

Defendants have filed objections to Plaintiff's evidence submitted in support of her Motion for a Preliminary Injunction. All of Plaintiff's evidence is relevant and admissible. Moreover, "For purposes of a preliminary injunction, a court may properly consider evidence that would otherwise be inadmissible at trial. Indeed, a court has the discretion to weigh evidence submitted in support of or against a motion for preliminary injunctive relief." *Cherokee Inc. v. Wilson Sporting Goods Co.*, No. CV 15-04023 BRO EX, 2015 WL 3930041, at *3 (C.D. Cal. June 25, 2015)

### VII.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction and Order to Show Cause should be granted in its entirety.

DATED: June 20, 2016

/s/ *Ronald A. Marron*
Ronald A. Marron
ron@consumeradvocates.com

**THE LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
*Counsel for Plaintiff and the Proposed Classes*